## W. U. STOCKER v. W. H. HUTTER.

APPEALS BY PLAINTIFF AND DEFENDANT FROM THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 11, 1890—Decided March 31, 1890.

| | |
|---|---|
| 134 | 19 |
| 164 | 139 |
| 134 | 19 |
| 175 | 478 |
| 134 | 19 |
| 190 | 475 |
| 134 | 19 |
| f 197 | 368 |
| 197 | 369 |
| 134 | 19 |
| 34 SC 1 | 97 |

(*a*) Plaintiff and defendant entered into contracts in the business of buying wood lots and cutting and marketing timber therefrom, wherein the defendant was to advance the purchase money for the lots, and all the moneys needed to pay the expenses of cutting and marketing the timber.

(*b*) The plaintiff was to cut and market the timber and pay the proceeds over to the defendant, who was to keep proper accounts of the same, and, after being reimbursed his advancements, etc., he was to account to the plaintiff, in a certain manner, for the balances remaining:

1. The complicated and disputed accounts between the parties having been examined and adjusted by a master, and his report approved by the court, the final decree on the account stated would not be disturbed upon assignments of error directed to the master's findings of fact, and to the account stated in pursuance thereof.

2. The defendant, by the agreements between the parties, was in the position of the trustee and banker of the plaintiff; his duty required him to furnish the plaintiff with particular accounts of the business on demand,

Statement of Facts.

failing to do which, though admitting a liability to account in the proceeding, he was to be charged with the entire costs thereof.*

3. The defendant having covenanted in one of the agreements to advance the moneys needed to pay the expenses, and testifying that he was to receive no interest individually, and the contract being silent on the subject, the plaintiff was not chargeable with discounts paid by defendant to raise money with which to make the advancements.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

Nos. 46, 55 January Term 1890, Sup. Ct.; court below, No. 1 December Term 1888, C. P. in Equity.

On October 29, 1888, William U. Stocker filed a bill in equity against William H. Hutter, in which he averred:

1. On or about the first day of September, 1879, with the defendant I engaged in the business of buying wood lots and cutting and marketing the timber and wood thereon, and continued so doing, at intervals, until on or about the first day of January, 1885.

2. The first wood lot, known as the John J. Unangst tract, was purchased and operated under the following conditions and agreements : Defendant advanced the money to pay for the tract and the expenses of marketing the lumber and wood thereon, and I was to cut and market the same and pay the proceeds to him as they were received, and, after taking thereout and from the proceeds of the sale of the tract the moneys so advanced, with legal interest, he was to account to me for the balance and pay me the same when called upon.

3. The second wood lot, known as the Bangor tract, was purchased on like conditions and agreements, with the exception that defendant agreed to advance the sum required for its purchase and cutting and marketing the timber thereon, without interest, if I would assume a certain note of Slater & Hudnit for $880, and agree that he should pay said note out of the proceeds of sales of said lumber and wood on said tract and apply the balance of said proceeds of sale to payment of balance of a mortgage amounting to $1,260, and to payment of a mortgage of $3,000, with interest, which I agreed to do.

4. The third wood lot, known as the Point Phillips tract,

---

* See Ahl's App., 129 Pa. 26.

Statement of Facts.

was purchased upon the agreement that defendant was to advance the purchase money and the expenses of cutting and marketing the lumber and wood thereon, and I was to cut and market the same and pay over to him the net proceeds of sales as received, and after he had been repaid the moneys so advanced, the balance of the proceeds, with the amount of the sale of said tract, was to be divided equally between defendant and myself.

5. Upon the above conditions and agreements, the said tracts were purchased, and the lumber and wood thereon cut and marketed, and the proceeds of sales, less the expense of marketing, duly paid by me, from time to time, to defendant, who, as I am not skilled in keeping accounts, was to duly keep proper accounts of the same and pay to me such balances as might be due to me, when called upon, as he had agreed and promised to do.

6. Notwithstanding that the sums so paid over by me and received by defendant from the profits and proceeds of said business and sales of said land were largely in excess of the moneys advanced by defendant, and that the obligations assumed by me and to be paid out of such proceeds due me were paid by me with other moneys, defendant has never finally and fully accounted for the same, although he has repeatedly promised so to do, and I have repeatedly called upon him so to do, and he has not paid over to me or to any one for me the balance due me, amounting, to the best of my information and belief, to the sum of $2,260, although often asked so to do, and still refuses to account for and pay over the same.

Wherefore I pray equitable relief: 1. That defendant be decreed to account for and pay to me the amount of such balance of money in his hands, due me, with interest. 2. For such other equitable relief as I may be entitled to.

—To the foregoing bill the defendant filed an answer admitting the averments which entitled the plaintiff to an account, but, setting out specifically his defences, he denied that he was in any way indebted to the plaintiff.

Issue having been joined, the cause was referred to *Mr. Orrin Serfass*, as examiner and master, who made a report stating an account and recommending the decree: " That William H. Hutter, the defendant, pay unto William U. Stocker, the

plaintiff, the sum of three hundred and thirty-seven dollars and seventy-six cents ($337.76), with interest from June 24, 1889; and that plaintiff and defendant each pay one half the cost of this proceeding."

To the master's report both plaintiff and defendant filed exceptions. These exceptions, being overruled by the master, were renewed on the filing of the report. After argument thereof, the court, SCHUYLER, P. J., entered a decree dismissing all the exceptions filed and confirming the report of the master.

The plaintiff then took the appeal to No. 46, specifying that the court erred in dismissing the several exceptions filed by the plaintiff, in confirming the master's report, and " in not decreeing the full amount claimed by plaintiff, with full costs."

. And the defendant took the appeal to No. 55, specifying that the court erred in dismissing the several exceptions filed by the plaintiff, " in imposing any part of the costs upon William H. Hutter, and in not dismissing plaintiff's bill with costs."

*Mr. W. H. Armstrong,* for the plaintiff appellant.

Upon the applicability of the statute of limitations, counsel cited: Hostetter v. Hollinger, 117 Pa. 611; Warner v. McMullin, 131 Pa. 370; Schoch v. Garrett, 69 Pa. 144; Johnson v. Rutherford, 10 Pa. 455; Van Swearingen v. Harris, 1 W. & S. 356; Thomson v. Hopper, 1 W. & S. 467; Chambers v. Marks, 25 Pa. 296; Jayne v. Mickey, 55 Pa. 260. Upon the duty of a trustee to be always ready with his accounts: 2 Lewin on Trusts, 676, 691. Upon the question of costs: Coleman v. Ross, 46 Pa. 185; Maguire's App., 102 Pa. 122; Kelso's App., 102 Pa. 7; Wadlinger on Costs, 361: Bowers v. School Board, 2 Pears. 227, 360; Tatham v. Lewis, 65 Pa. 65.

*Mr. John C. Merrill,* for the defendant appellant.

. Upon the question of costs, counsel cited: Gyger's App., 62 Pa. 73; O'Hara v. Stack, 90 Pa. 492.

## STOCKER'S APPEAL.

OPINION, MR. JUSTICE CLARK:

The bill in equity in this case was filed by William U. Stocker against William H. Hutter, for an account of moneys

received and expended by Hutter, in certain timber transactions between them, in Northampton county. The controversy embraces operations upon three different tracts of woodland, known as the Unangst, the Bangor or Long, and the Point Phillips tracts; and each of these tracts, having been operated upon a different contract from the others, is the subject of a separate and independent adjustment. The defendant's answer denied any indebtedness to the plaintiff, but admitted a liability to account, and the case was thereupon sent to a master, who called the parties before him, with their books and papers, and their witnesses, and, having examined all these, apparently with much patience and care, stated an account which the court below approved and confirmed. Both parties, however, seem to be dissatisfied with the result, and both have entered an appeal in this court.

Where complicated and disputed accounts have been examined and adjusted by a master, and an account stated between the parties, which has been approved by the court below, this court will not reverse the findings of the master upon the questions of fact involved, and re-state the account, except upon clear evidence of plain mistake. Even where the testimony is conflicting, and the merits may appear contrary to the master's conclusions, yet the findings will not be set aside, except for clear error. As all the assignments of error in this case, with a single exception, perhaps, are to the master's findings upon questions of fact, and to the account as stated in pursuance of these findings, it must be considered and disposed of under this well-settled rule of equity practice.

The most important testimony in this case, indeed almost the entire testimony, is that of the parties themselves, and this is conflicting and contradictory. The master had the parties and their witnesses before him; he heard their testimony, and observed their manner; he examined their books and memoranda, and observed their form and appearance. His examination of the case extended over several months, and he had opportunity for a satisfactory and searching examination of the whole case. His report is therefore entitled to the fullest consideration at our hands, for we lack all these opportunities. The reason of the rule which gives this almost conclusive effect to the master's findings, when they are approved by the court

below, especially when the books and papers are accessible to the judge, is founded in reason, as well as authority, and no case can better illustrate, not only its propriety, but its necessity, than the case now under consideration.

The plaintiff testifies, from memoranda in his possession and vouchers he has procured, that he paid over to Hutter the proceeds of the Unangst timber, amounting to $2,600 or $2,700; that Hutter's advancements did not exceed $900 to $1,100; and that Hutter has not accounted for the difference. He admits, however, that his memoranda are imperfect; that he did not keep all of the items strictly, and that Hutter was to keep the regular books. In reference to this, in various parts of his testimony he says: "I kept no full accounts of our transactions; I left that to Col. Hutter; it was our agreement that he was to keep them; I kept some memoranda as to the Unangst tract; I did that for my own information, not as a book of accounts." "I am not positive that those books contain a full account." "I have no regular account of the expense of cutting or marketing the wood on the Unangst tract; I have no means of getting at the total amount of that expense. When I didn't have money of my own, Hutter would furnish me with money to pay expenses on that tract. He paid between $900 and $1,100, which includes the $600 purchase money. I don't know just what it is; I have not a full statement of the amount I paid myself. I have not an itemized statement of what Hutter paid for expenses, but I am positive it wasn't over $1,100."

It is plain, from this testimony, that the balance stated by Stocker, as above, is at the best a mere estimate, made from the imperfect memoranda in his possession. It is true he introduced certain vouchers of the Glendon Iron Co., the Lehigh Valley R. Co., and others, showing various sums of money which he alleges came into Hutter's hands, approximating the amount stated. The correctness of these vouchers is not specifically denied, but Hutter testifies that he kept a regular account of all the transactions connected with the Unangst lot, including all the moneys received and paid out; including also the proceeds of such vouchers as were received by him, and that the balance in his hands did not exceed $750; but he says the book containing this account is lost or mislaid, and, al-

though he has made diligent search therefor, it cannot be found. He is positive, however, in his statement that this book, if it could be found, would show conclusively that the entire sum realized from this lot did not exceed the sum stated.

On July 9, 1880, Hutter wrote Stocker as follows: "Easton, Pa., July 9, 1880. I do not see any use in making out a long statement of all the receipts and expenditures on our wood tract. Out of the profits I paid the

| | |
|---|---|
| Knoble judgment, . . . . . . | $370 00 |
| Interest . . . . . . . | 28 83 |
| I paid the Northampton County Bank interest on $3,000, from December 1, '77, to June, '79, | 270 00 |
| I paid John Lutz interest on $2,000 for one year, | 120 00 |
| | $788 83 |

"I am afraid I have paid out more than I have received. It looks so to me." The Unangst enterprise had terminated about or before July 1, 1880, and this statement was made whilst the matter was fresh in the minds of the parties. This was not such a statement of account as Stocker was entitled to have, but, if it was as far from being correct as it is now alleged, it is most probable that some objection would have been taken to it at the time. Hutter testifies, however, that this statement of account, and of the application of the profits of the Unangst lot, was never afterwards questioned by Stocker, until about the time of the bringing of this suit. In this he is corroborated to some extent by his wife, who was present at an interview between Stocker and Hutter, about a year before this suit was brought, when Stocker made no such claim as he now makes upon the Unangst lot, but claimed $700 to $800 on the Bangor lot. It will be observed that Stocker did not have the means of knowing what the balance on this lot was; he testified to a mere estimate, whilst Hutter, who kept the accounts, had at least the opportunity to know whereof he testified.

The master found that the books containing the accounts of the Unangst lot were actually lost; that the profit of this enterprise did not exceed $788.83; that the four sums specified in the above statement were actually paid by Hutter, and that the money was properly and rightfully appropriated to the

same.  We find nothing in the case to show that these findings are clearly erroneous; the evidence was contradictory and conflicting, but it was for the master to test the veracity of the witness, to weigh the evidence, and to determine the facts, and we see no clear cause to interfere with his findings.  In this view of the case, the question raised upon the statute of limitations becomes immaterial.

As to the Bangor tract, little need be said.  This account Hutter kept in the old bank ledger, and a comparison of the items therein with the appellant's claim leaves little to dispute upon.  There was some dispute as to a certain note of Hutter's dated March 1, 1884, for $1,050, upon which was indorsed, in the handwriting of one of the clerks of the bank: "This note is to be paid by Samuel Drake, of Easton, to whom I have sold more than sufficient logs to meet it.  Paid April 23d, 1884." The plaintiff claimed that presumptively this note had been paid by Drake according to the terms of the indorsement; but the master found that it had not been actually paid, but was embraced in another note of $1,259.85, dated "April 23, 1884," with which the defendant is already charged.  There was also some credits claimed by Hutter, which, although contested before the master, do not now seem to be seriously disputed.  The amount to which the plaintiff was entitled upon a statement of the accounts of the Bangor tract was fixed at $303.75.

The defendant produced his books, containing the original entries for moneys received and paid out in the operation on the Point Phillips lot, and in reference to this there is little dispute.  The contested items are very small, and we think they were rightly disposed of by the master.  On this lot, there was a balance against the plaintiff of $32.60.

We are of opinion, however, that it was Hutter's duty to furnish Stocker with a particular account of these various transactions, on demand, within a reasonable time after they were closed respectively.  It appears, not only from the testimony, but from the very nature of the transactions themselves, that Hutter was to keep the accounts.  He was acting as trustee and banker for Stocker, receiving all the income and proceeds of the timber, with power, after payment of expenses, to apply the residue to Stocker's debts, in relief of his property which Hutter held in trust to secure the debts; and it was his

duty, in the discharge of this trust, and of the confidence reposed in him by Stocker, to keep a faithful and particular account of all these transactions, and to exhibit the same to Stocker, so that a satisfactory adjustment might be made between them at the close of each of these various enterprises. This he failed to do, although frequent and importunate demands were made upon him to that effect. It was his right to receive and disburse the money, and his correspondent duty, as a faithful trustee, to render an account. His refusal so to do obliged the plaintiff to resort to this proceeding, the result of which, through his neglect, is now rendered so unsatisfactory. The statement of July 9, 1880, although it has been found to be substantially correct, according to the best light we now have, was not such an account as the plaintiff was entitled to have; and a proper account, owing to the loss of the books, cannot now be rendered. The defendant has no right to complain of delay; the delay was caused by his persistent refusal or neglect to perform a plain duty.

We are of opinion that by this default, in this respect, he should be charged with the entire costs of this proceeding. The plaintiff has been subjected to much trouble and expense in getting what should have been given him voluntarily, fully, and freely, long ago. In courts of equity, costs are in the sound discretion of the chancellor and are awarded according to the justice of each particular case: Gyger's App., 62 Pa. 73; O'Hara v. Stack, 90 Pa. 492.

It is therefore ordered that the entire costs of this proceeding in the court below, and in this court, be paid by the appellee, and with this modification the decree is affirmed.

### HUTTER'S APPEAL.

OPINION, MR. JUSTICE CLARK:

This controversy arises upon the construction of the agreement dated March 20, 1882, between William U. Stocker and William H. Hutter, in relation to the cutting of the timber upon what is known as the Bangor tract. The contract, in that part of it which gives rise to this contention, reads as follows:

" Whereas, said William H. Hutter has become the purchaser

of a tract of twenty-five acres, more or less, of timber land, situate near Bangor," etc., "for the price of $90 per acre, and proposes to permit said William U. Stocker to cut and market the timber on the same, in consideration of his paying all advances made by said William H. Hutter on the same, and his indebtedness to the Northampton County National Bank: now, this agreement witnesseth that the said William U. Stocker, in and for the said timber privileges and the said advances to be made, and of his indebtedness to said bank, (amounting to about $5,140,) hereby agrees and binds himself to take possession of the said timber tract, for the purpose aforesaid, as soon as can conveniently be done, and proceed to cut and market and duly account for the timber upon the same to the said Wm. H. Hutter and pay to him the proceeds thereof, upon condition that said Wm. H. Hutter advance all moneys needed to pay the expenses of cutting and marketing said timber, and that he apply the proceeds of sales of the same, and of said timber land, to the repayment to himself of the purchase money of said timber tract, and the expenses connected therewith, and the balance, first, to the payment of a note of $880 and interest, given by W. U. Stocker & Co., and discounted by said bank; secondly," etc.

It will be seen by these clauses of the contract, that Hutter was to "advance all moneys needed to pay the expenses of cutting and marketing said timber," and was to apply the proceeds of the sale to the repayment to himself of the purchase money of said timber tract, "and the expenses connected therewith," etc. The contract makes no provision as to interest on these advances, and Stocker alleges that he was to pay no interest. On this branch of the case he says: "There was no interest to be paid on the money advanced on this tract, for the reason that I assumed a note of Slater & Hudnit at the Northampton County Bank for $880; I was to pay that note; that was our agreement. Col. Hutter at that time was cashier of the Northampton County National Bank. He requested me to assume that note. Of course, I knew nothing about the note being there at the time. Col. Hutter told me that if I would assume that note he wouldn't charge me interest for his advancement. He said: 'If you will assume that $880, I will advance you the money to buy the land, and market the

timber of the Long tract.' I then said: 'Then I will not have any interest to pay.' He replied: 'This is the interest.' That was about all that was said. I then assumed the note, with the full understanding that I had no interest to pay, as I never had any value for the note." Mr. Hutter, on the other hand, most emphatically denies that any such arrangement was made with reference to the Slater & Hudnit note. But, speaking of this note, he says: "As cashier of the bank, I endeavored to save that note for the bank. I don't think I told Stocker that, if he would assume that note, certain favors would be shown him by the bank. I undoubtedly demanded that that note should be kept alive and taken care of. I can't tell whether, at the time of the Bangor agreement, the parties to the Slater & Hudnit note were solvent or insolvent. Hudnit's estate was insolvent on his death; he was dead before the agreement was made. I don't remember what Slater's financial condition was at that time. I think it is very probable that the note was considered by the bank at that time to be uncollectible."

During the progress of the work, however, Hutter, in order to procure the money for these advances, or some of them, had his own notes discounted in the Northampton County National Bank, and has charged the plaintiff with these discounts. The only question in this case is whether or not the plaintiff, Stocker, was properly chargeable therewith, in an account between Hutter and himself, under this contract.

The contract itself, unless the discounts can be considered a part of the "expenses," for which Hutter was to reimburse himself, is silent on the subject. These advancements, however, were in the nature of a loan, and the legal presumption would be that interest was incident to the debt. Money lent bears interest without any express agreement: Port Royal v. Graham, 84 Pa. 426; but, as the contract is silent, it was competent for the plaintiff to rebut the presumption, by proof that the understanding and agreement of the parties were otherwise.

The term "expenses," used in its most general sense, would perhaps be broad enough to include moneys expended in discounts for loans, but it may, with equal propriety, have been used in a more restricted sense, as covering merely "the ex-

penses of cutting and marketing the lumber" for which, according to the express terms of the contract, the advances were to be made. This construction would be consistent with the statement that, in consideration of Stocker's assumption of the Slater & Hudnit note, the right to interest was relinquished. In view of the fact that no express provision is made in the contract, either for interest or discounts upon these advances, and of the somewhat ambiguous character of what is termed "expenses," we think the true meaning and intent of the parties, in this respect, is to be ascertained from the full reading and spirit of the contract, and from the other evidence in the cause.

It it clear that Hutter was to advance the money, and if Stocker was liable for anything beyond the principal it was for interest. There is no provision that Hutter was to procure the money by loan, or upon discounted paper or otherwise; he was to advance it; and, if he was obliged to have his own paper discounted in order to get it, that was a matter of no concern to Stocker. The notes which were discounted were Hutter's own notes, and in thus providing the money he acted upon his own responsibility; and if Stocker was liable at all for the use of the money, as we have already said, it was for interest, as upon a loan. But Hutter testifies that he was to receive no interest; he says: "I was to receive, individually, no interest." "I wasn't to expect interest individually." He also says that he cannot recall that anything was said about getting the money out of the bank. We are of opinion that the parties did not have it in contemplation that the discounts upon money borrowed by Hutter, to make up his advances, were to be embraced in the expenses connected with the timber tract: but that Hutter, in order to secure the $880 note to the bank, of which he was the cashier, agreed to make these advances, free from interest, and that Stocker should not be charged with the discounts.

It is true, the outcome of the entire timber transaction was directly for the benefit of Stocker, but indirectly to secure the $880 note. It is true, Hutter was not the holder of the note, but he was cashier of the bank, and the bank, through its cashier, might well afford to relinquish the discounts upon the advances, to secure payment of the note; and, if the agreement

was as stated, the assumption of the note, and the agreement that it should be paid out of the proceeds of the timber, was a sufficient consideration to support the agreement to relinquish the interest and discounts. It appears that the note was charged to Stocker's account some days before the date of the agreement, but it does not appear that the agreement was executed on the day it was made; it may have existed in parol, from the 14th February until the time of its execution, and this is the allegation on part of the appellee.

Upon a careful consideration of the whole case, we cannot say that the master committed clear error in passing upon this question of fact. We are of opinion that the testimony sustains the conclusion to which he came, and we are therefore unwilling to disturb the decree, on the assignments of error filed in this case.

> The decree is affirmed, and the appeal dismissed, at the cost of the appellant.