# Brotherton Bros. and F. E. Dewey *v.* Reynolds, Appellant.

*Equity—Master's findings of fact.*

The findings of a master on questions of fact, approved by the court below, will not be set aside in the Supreme Court, except for clear error, even where the testimony is conflicting, and the merits may appear contrary to the master's conclusion.

*Contract—Sale of timber—Fraud—Misrepresentations—Rescission.*

Defendants sold to plaintiffs the timber on about one thousand acres of land. The land was cut up by ravines and broken by elevations, and the quantity of timber upon it could only have been ascertained by the work of four men for twenty-four days. Defendant represented that there were nine million feet of timber upon the tract, although he knew that there were only three million feet. He directed one of his employees to show plaintiffs only the best part of the timber, and not to take them over that part which had been cut. The employee obeyed his orders, and stated to plaintiffs that what he showed them was a general average of the timber. Defendant knew the quantity of timber on the land from an estimate which he had previously had made. *Held* that plaintiffs were entitled to a rescission of the contract.

This is not the case of buyers relying upon an imperfect investigation of their own, as in Mehaffey v. Ferguson, 156 Pa. 156, but the case of a buyer relying upon a false estimate of the vendor, and his confidence increased by a further falsehood still more persuasive. By Mr. Justice Dean.

Argued May 1, 1894. Appeal, No. 65, Jan. T., 1894, by defendant, from decree of C. P. Warren Co., June T., 1890, No. 11, in favor of plaintiff on bill in equity. Before Sterrett, C. J., Green, McCollum, Mitchell and Dean, JJ. Affirmed.

Bill in equity for rescission of contract of sale of timber, and for an account. Before Henderson, P. J., specially presiding.

The case was referred to W. V. N. Yates, Esq., as master, who recommended a decree in accordance with the prayers of the bill.

The facts appear by the opinion of the Supreme Court.

The court entered the following decree.

" And now, to wit, August 31, 1893, this case came on to be

heard, and having been fully argued by counsel, and upon due consideration thereof, it is ordered, adjudged and decreed:

" That the agreement of Dec. 13, 1889, between T. J. Reynolds and Brotherton Bros. and F. E. Dewey, as set forth in the bill filed in this case; the bill of sale of lumber by Brotherton Bros. to T. J. Reynolds dated Dec. 6, 1889; the promissory note made by F. E. Dewey to the order of T. J. Reynolds dated Dec. 13, 1889, payable six months after date, for $3,000; the mortgage for $3,000, dated Dec. 13, 1889, to secure said note, executed and delivered to said Reynolds by said F. E. Dewey, being a mortgage on 130 acres of land in Green township, Erie county, Pa., and recorded in the recorder's office of said Erie county; the note of Brotherton Bros. and Dewey, dated Dec. 13, 1889, for $2,000, payable to T. J. Reynolds six months after date; and agreement made between T. J. Reynolds and Brotherton Bros. and Dewey, dated Feb. 14, 1890, are void and not binding upon the said Brotherton Bros. and Dewey, the plaintiffs in this case.

" Second. That said T. J. Reynolds is ordered and directed to deliver up for cancellation the said agreements made Dec. 13, 1889, and Feb. 14, 1890, said bill of sale of lumber, said promissory note for $3,000, said instruments in writing to be delivered up to the master in this case for cancellation.

" Third. That said Reynolds satisfy of record said mortgage from said F. E. Dewey to said T. J. Reynolds, for $3,000, dated Dec. 18, 1889.

" Fourth. That all bargains, agreements or transactions between said plaintiffs and defendant in relation to lumbering property as set forth in plaintiffs' bill are rescinded, abrogated and annulled.

" Fifth. That an account be taken of the money paid out and expended by the complainants in and about the attempted carrying out of said agreements with said defendant in making lumber and ties thereunder; and of all money paid to the respondent, by the complainants under said agreements; and of all personal property of the complainants or either of them delivered to the respondent, and by the respondent to the complainants by reason of the said attempted carrying out of said contracts; and that the said T. J. Reynolds pay over to the said complainants such sum as may be found due on such ac

counting, together with the costs of this proceeding and of such accounting."

*Error assigned*, among others, was above decree, quoting it.

*W. M. Lindsey* and *Chas. W. Stone, J. O. Parmlee* with them, for appellant.—Having repeatedly gone upon the land and had the opportunity of inspecting the timber, plaintiffs cannot set up defendant's misrepresentations of quantity or quality of timber as a means of avoiding their contract: Mahaffey v. Ferguson, 156 Pa. 156 ; Veasey v. Doton, 3 Allen, 380 ; Smith v. Richards, 13 Peters, 42; Slaughter v. Gerson, 13 Wall. 383; Farnsworth v. Duffner, 142 U. S. 47 ; Shisler v. Baxter, 109 Pa. 443 ; Wetherill v. Neilson, 20 Pa. 448 ; McFarland v. Newman, 9 Watts, 55 ; Whitaker v. Eastwick, 75 Pa. 229 ; Lord v. Grow, 39 Pa. 88.

*W. W. Wilbur, Wm. Schnur* with him, for appellees.—Where the material assignments of error are to the findings of fact by the master, the Supreme Court will not reverse if the findings are based upon evidence sufficient to submit to a jury: Warner v. Hare, 154 Pa. 548 ; Kimball's Ap., 155 Pa. 112; Potter's Ap., 158 Pa. 292; Stocker v. Hunter, 134 Pa. 23 ; Weaver's Ap., 12 Atl. R. 312.

Where a sale is consummated by means of fraud, the vendee, upon discovering the fraud, has a right to affirm or disaffirm the purchase: Mahaffey v. Ferguson, 156 Pa. 156.

OPINION BY MR. JUSTICE DEAN, Oct. 1, 1894 :

The bill in this case averred that defendant, by false and fraudulent representations and devices, had induced the plaintiffs to contract with him for certain standing timber, and prayed for a rescission of the contract, an accounting for money paid, and a computation of damages. The defendant denied any false or fraudulent representation, and averred the contract was in all respects reasonable and fair, and made by plaintiffs with a full knowledge of all the material facts.

Reynolds, a resident of Rochester, New York, was the owner of 982 acres of timber land in Glade township, Warren county, Pennsylvania ; on this he had erected a sawmill and other im-

provements, and was carrying on the manufacture of lumber. While so engaged, on 13th of December, 1889, he entered into a written agreement with plaintiffs to lease to them the sawmill and the other improvements on the land, for the term of four years, with the standing timber thereon, they to saw the timber into lumber within that time, and deliver it to defendant on the cars at Warren for shipment to such consignees as he should direct; also, to manufacture and deliver the railroad ties thereon. A complete schedule of prices to be paid by defendant to plaintiffs for each of twenty-one kinds and quality of lumber, on delivery, was made part of the agreement. The payments for such lumber were to be credited by defendant to plaintiffs, the 15th of each month, for all deliveries made the previous month, until the sum of $30,000 had been thus paid Reynolds as the consideration of the contract; with the stipulation, however, that Reynolds was to pay to plaintiffs in cash each month $6.00 per thousand on lumber, and 18 cents for each tie, leaving consequently only the excess above these amounts, as shown by the schedule prices, as actual payments on the whole price; further stipulating that, when the whole $30,000 was thus received by Reynolds, the timber yet unmanufactured, with the sawmill and appurtenances, were to become absolutely the property of plaintiffs. As part payment of the $30,000, they delivered to Reynolds a smaller sawmill they owned on another tract, at the price of $1,600, some sawed lumber valued at $1,400, and a promissory note for $3,000, secured by mortgage on property in Erie county. At the same time, Reynolds sold and delivered to plaintiffs in addition, a large amount of other personal property upon the premises, not included in the transfer of the timber. The price agreed upon for this was $4,000, $2,000 of which they paid in cash, and the balance in a note at six months.

The plaintiffs then took possession of the property, and commenced to manufacture and deliver lumber as agreed upon, and so continued until February 14, 1890. They had then manufactured about 100,000 feet of lumber, and delivered about half of it on the cars, at $8.00 per thousand, the cost of manufacturing being $6.00 per thousand. They had also in the woods about 200,000 feet of logs, cut ready for hauling to the mill, and the cost of these was $2.00 per thousand; the plaintiffs

had also, in purchases of additional tools and equipment. and expenditures about their operations, paid out about $2,250. The parties on that day made a new agreement, whereby plaintiffs surrendered to Reynolds all the property contracted for in the first agreement, and all that had been added by them; Reynolds agreeing to manufacture and sell timber and ties from the land until the net proceeds paid the note of $2,000, and the $30,000, the consideration money of the first agreement; a reasonable compensation to Reynolds for his services and risk, not to exceed $5,000 per year; further, he to account for all lumber received and manufactured up to that date; when all these payments were made out of the net proceeds of timber manufactured, Reynolds was to re-transfer all the property to plaintiffs, with the right to two years' further time to remove any timber yet standing. Accordingly, Reynolds again resumed possession.

The plaintiffs alleged they had entered into both contracts, relying upon the representations of Reynolds as to the quantity and quality of the timber, and that these representations were grossly false and known to be so by Reynolds at the time. That he had represented there was upon the land nine millions of feet, when in fact there were not three millions; also, that it was of the best quality, while in fact it was very inferior; that he had pointed out to them timber as on this tract which was not on it.

The master, from the evidence, has found, as a fact, that Reynolds had said to plaintiffs before the first contract was made, there were nine millions of feet on the land; he finds, further, that there were not three millions, and that Reynolds knew it; that Reynolds represented the timber as of good quality, yet it was very poor, and Reynolds knew this. That he made other false representations to plaintiffs, to induce them to enter into the contracts, and that both contracts were made by plaintiffs in reliance upon these representations.

Throughout, in his findings of facts and conclusions of law, the master's report is against defendant; and he suggests that the court decree that Reynolds deliver up both contracts for cancellation, as also the notes, mortgages and securities in his possession, delivered to him by plaintiffs in pursuance of the contracts, and that all bargains and agreements on the subject be rescinded. Further, that an account be taken of the money

expended by plaintiffs, and paid by them to defendant, and of damages sustained by them, and that defendant be ordered to pay over to them such sum as should be found due.

On exceptions filed by defendant to the report, they were overruled by the court, the report confirmed, and the decree suggested by the master adopted. From that decree defendant appeals.

All of the nineteen assignments of error either expressly or inferentially deny the correctness of the master's findings of fact. Unless that denial in some degree be sustained, the averments of error must fail. While we frequently draw from facts other inferences than those the master and the court below think warranted, and often come to a different conclusion as to the law applicable to the facts, it is a very rare case that the findings of fact by the master, approved by the court below, are so manifestly wrong that we feel called upon to set them aside. Very often the testimony presented to us on paper-books seems not to warrant the findings; but we know full well, there probably was much at the hearing to induce belief or disbelief, which does not and cannot find its way to the printer. The manner of a witness, his intelligence, acuteness of perception and opportunities for observation, all are matters which influence the master, but cannot be fully transferred to the report. Besides, there is more or less abbreviation, lack of emphasis, and error in the most accurate transcripts of testimony. So, notwithstanding the urgent appeal of counsel for appellant, we must adhere to the rules so often announced before, and so recently in Stocker v. Hutter, 134 Pa. 19: " The findings of a master on questions of fact, approved by the court below, will not be set aside in the Supreme Court, except for clear error, even where the testimony is conflicting, and the merits may appear contrary to the master's conclusion."

We must then assume, as facts, that there was gross misrepresentation of the quantity; that there was not one third of the nine millions represented on the land; that there was also misrepresentation as to quality; instead of being very good, it was very poor; and that Reynolds knowingly misstated the facts in each particular. But it is argued that, from the undisputed facts, the inference is that the plaintiffs had every opportunity before bargaining to examine the timber, and in

fact did examine it, and the rule is invoked as laid down in Farnsworth v. Duffner, 142 U. S. 47, and similar cases, where the suit was for a rescission of the contract on the ground of fraudulent representations: " In respect to such an action, where the means of knowledge respecting the matters falsely represented are equally open to purchaser and vendor, the former is charged with knowledge of all that by the use of such means he could have ascertained." We do not question the soundness of this rule, but it is not applicable to these facts.

The subject of this contract was the timber standing on about 1000 acres of land, cut up by ravines and broken by elevations. The most accurate estimate of quantity would have been to run the outside lines, and then traverse the whole tract by sections, inspecting and counting the trees. Neither party desired to adopt such an expensive and time-consuming method as this. Another, the crudest sort of an estimate, is to look at different parts of the tract, notice the relative merits of each, estimate roughly how much was well timbered, and how much indifferent, then estimate how many thousand feet stood on one acre of each and multiply that by the number of acres of the same kind; or another method is that pursued by some of the witnesses here; a party of three or four blaze a strip eight or ten rods wide from one side clear across the tract, and estimate, by slowly walking over the strip, the quantity; then blaze another strip, and so back and forth until the whole tract has been gone over. This method, some of the witnesses state, required the time of four men about twenty-four days.

The master has found, as a fact, that these plaintiffs made no estimate of any kind; they looked at the timber, spent only a few hours in doing so, and then they were conducted by defendant's agents and employees. One of them, Henry S. Deal, testified that he went upon the land twice with Brotherton, and says: " He (Reynolds) told me to show them the best part of the timber, and not to take them over that part that had been cut, and I done as directed by Mr. Reynolds." Smiley, one of the parties interested with Brotherton, says that Deal said to him, what he showed them was a general average of the timber.

The master finds that Reynolds stated to plaintiffs he had had the timber estimated, and there were nine millions; fur

ther, that he knew this was not true. If this be correct, then, by a trick carried out through Deal, his agent, he sought to confirm plaintiffs in trusting in his false statement; tried to lead them to believe that with their own eyes they were witnesses to the truth of it. This is not what the law means by knowledge equally accessible to both parties; by parties dealing at arms' length on their own judgment. The knowledge of the quantity was difficult to be had; to obtain it required many days of careful, laborious examination. Reynolds, in substance, said, "heretofore, I got this information; I have had an estimate made." Then to guard against discovery by them of the truth, he successfully planned to mislead them. Whether these were the facts, was open to question before the master, where defendant was fully heard; the master, on sufficient evidence, has found the facts against him, and that is an end of discussion here. No further knowledge was acquired by plaintiffs after they took the possession, which they kept for two months and then surrendered. Most of the old employees of Reynolds remained; plaintiffs themselves, being busy closing out their operations at another mill, were seldom on the ground, and had but little further opportunity for observation.

The master has found that, trusting in this misrepresentation as to quantity, persistently kept up by trick and artifice, the plaintiffs were induced to contract. They could have made an estimate, but why should they do so, when Reynolds had one made which he assured them was correct? Especially why, when Deal had shown them a part of the timber which was good, and represented that was an average of the whole? To hold, on these findings of the master, the means of knowledge were equally open to both parties, would be equivalent to holding that systematic and continued deception was a means of knowledge.

This is not the case of buyers relying upon an imperfect investigation of their own, as in Mahaffey v. Ferguson, 156 Pa. 156, cited by appellant, but the case of a buyer relying upon a false estimate of the vendor, and his confidence increased by a further falsehood still more persuasive.

The argument of the learned counsel for appellant, however forcible, all through is to the effect that the master and the court below ought not to have found the material facts against

them; but they have wholly failed to show there was no evidence tending to establish the facts, and that, if established, the inferences drawn were not warranted. We find nothing sufficient to justify us in reversing the decree on any one of the assignments, therefore it is affirmed, and the appeal is dismissed at costs of appellants.