Hodge, Appellant, v. Me-Bee Co., Inc.
Hodge v. Me-Bee Co., Inc., Appellant.

586

Argued January 12, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Nicholas G. Petrella,* for plaintiff.

*William R. Deasey,* with him *Kelly, Deasey & Scanlan,* for defendants.

OPINION BY MR. JUSTICE ROBERTS, April 16, 1968:

The cross appeals which this Court is today called upon to decide arise from the following transaction. Samuel Hodge and four medical doctors are the sole stockholders of the Me-Dee Company, which in turn owns all the stock of Me-Bee Company. Both corporations were formed for the purpose of erecting, operating and occupying a medical building in which the four doctors would conduct their respective medical practices. Hodge's exact stake in this venture has never been made completely clear, although it appears that certain tax advantages befell him as a result of his participation.

Between June 1958 and July 1962 Hodge loaned various sums of money to Me-Bee, totalling $20,528.71, with the oral understanding that this money would be repaid when the defendant corporations realized a net profit. In his complaint Hodge alleged that he had repeatedly demanded the re-payment of his loans, but that defendants have refused. Hodge thus prayed that the court enter judgment "against defendants Me-Dee Company, Incorporated and Me-Bee Company, Incorporated jointly and severally with interest." Defendants, in their answer, admitted every allegation in plaintiff's complaint, but asserted, as new matter, the fact that no payment was yet due because no net profit had been realized by defendants. On this issue alone the parties went to trial.

Trial was held before a judge sitting without a jury on June 15, 1966. On June 27, 1966 the court entered a verdict for plaintiff Hodge in the amount of $20,528.-71 with interest. Defendants filed exceptions which were subsequently denied by the court en banc on January 26, 1967. Accordingly, Hodge computed the interest due, and on March 2, 1967 assessed damages of $26,346.56. On March 8, 1967 defendants filed their appeal which appears on our docket as No. 1, January Term, 1968. Subsequent to the filing of this appeal, but prior to its perfection, the trial judge issued an order clarifying his original verdict. This order recited that the interest awarded shall run only from the date of trial, i.e., June 27, 1966. From this order plaintiff Hodge has appealed, his action appearing on our docket as No. 19, January Term, 1968.

## Me-Bee and Me-Dee Appeal, No. 1

Appellee Hodge filed a motion to quash this appeal, and we ordered that this motion be argued at the time of oral argument before us. Having now heard argu-

ment, this Court is of the opinion that appeal No. 1 must be quashed.

Under the Act of May 19, 1897, P. L. 67, §2, 12 P.S. §1134, after an appeal has been filed, the appellate court prothonotary shall issue a writ of certiorari directed to the court from which the appeal is taken commanding said lower court to send the record in the case to the appellate court. The actual task of filing this writ with the prothonotary of the lower court falls upon the party taking the appeal, in this case Me-Bee and Me-Dee. The statute clearly provides that until this writ is filed with the court below, the appeal shall not be considered perfected. In the present case, although the appeal was filed on March 8, 1967, well within the statutory time limit set forth in the Act of May 19, 1897, P. L. 67, §4, as amended, 12 P.S. §1136, for the *filing* of appeals, it is uncontradicted that the appeal was not *perfected* until October 4, 1967, the day on which appellants finally lodged the writ with the lower court.

Section 4 of the Act of 1897, as amended by the Act of March 12, 1925, P. L. 32, provides that appeals must be *filed* within three calendar months from the entry of the order appealed from (in this case the order was entered January 26, 1967, thus making the final day for filing April 26, 1967); however, neither §4 nor §2 sets a mandatory time limit for perfection of this appeal. Nevertheless, this Court has held that while the appeal need not be perfected within the three month period for filing, it must be perfected within a reasonable time thereafter, or else be quashed. In the present case, a period of almost six months elapsed between the last day for filing this appeal, April 26, 1967, and the date on which the appeal was perfected, October 4, 1967. Even under our most liberal cases, this delay is far too long to be considered reasonable.

In *Fenerty Disbarment Case,* 356 Pa. 614, 52 A. 2d 576, cert. denied, 332 U.S. 773, 68 S. Ct. 89 (1947), the decree appealed from was entered in March, the last day for filing the appeal was in June, yet the appeal was not perfected until October when the writ of certiorari was filed in the court below. We quashed the appeal holding that a *four* month delay (June to October) was unreasonable in spite of the fact that both sides *and* the lower court agreed to date the perfection nunc pro tunc back to August. See also *Dziengielewski v. Dickson Cty. Sch. Dist.,* 314 Pa. 24, 170 Atl. 268 (1934) (delay of less than two months held unreasonable) ; *Miller Appeal,* 188 Pa. Superior Ct. 198, 146 A. 2d 343 (1958) (delay of less than five months held unreasonable).

The only excuse offered by appellants to justify their actions is an averment that corresponding counsel in Delaware County was ill, an excuse which we do not regard as satisfactory, given the extreme length of this delay. For this reason we hereby quash appeal No. 1, January Term, 1968, appellant having failed to perfect it within a reasonable time after filing same.

## Hodge Appeal, No. 19

In this appeal, Hodge launches a two-pronged attack upon the order of March 17, 1967 in which the trial judge indicated that interest on the Hodge loan would run only from the date of trial. Appellant maintains first that, as a matter of law, interest *must* run from the date on which Hodge first advanced the money to appellees since this was constructively admitted by Me-Bee and Me-Dee in their pleadings. It is also argued that we must invalidate the order because it was allegedly entered ex parte, without proper notice or

opportunity to be heard being given to appellant.[1] Neither of these contentions do we find persuasive.

Because the oral contract covering the terms of the Hodge loan did not mention interest, appellant relies on the doctrine, admittedly well established, that there exists a presumption that money loaned bears interest. Appellees take no issue with this general proposition. *Stocker v. Hutter*, 134 Pa. 19, 19 Atl. 427 (1890); *Nicolazzo Estate*, 414 Pa. 186, 187 n.1, 199 A. 2d 455, 456 n.1 (1964) (dictum). At this point, however, appellant's house of cards collapses. He asserts that because the complaint alleges the existence of a loan and the answer explicitly admits this fact, given the presumption that loans bear interest it follows that an admission of the existence of a *loan* is also a judicial admission that interest is owing. The fallacy in this argument, unfortunately, abides in the notion that by admitting a fact from which flows a presumption the pleader waives his right to rebut this presumption.

We can find no authority whatsoever for such a proposition. Presumptions are not evidence and they

___

[1] Although this order of March 17 was entered a week after Me-Bee and Me-Dee had filed their appeal, no argument has been made that the mere filing of an appeal deprives the lower court of jurisdiction to amend its original order. Under our cases, the event which *does* divest the trial court of jurisdiction to alter its original order is not the filing of the appeal, but the receipt by the lower court of the writ of certiorari commanding that court to send the record to the appellate tribunal. *Corace v. Balint*, 418 Pa. 262, 210 A. 2d 882 (1965); *Sowers Estate*, 383 Pa. 566, 119 A. 2d 60 (1956); *Harwood v. Bruhn*, 313 Pa. 337, 170 Atl. 144 (1934); *Commonwealth ex rel. Podvasnik v. Podvasnik*, 198 Pa. Superior Ct. 107, 181 A. 2d 843 (1962). There is thus no reason for this Court to raise, sua sponte, any question of subject matter jurisdiction, for the court below had jurisdiction, having entered its order on March 17, almost eight months before it received the writ of certiorari.

are not facts; they are rules of law (in this case a rule of law placing the burden of proof upon the borrower to show that the loan does not bear interest, *Stocker v. Hutter,* supra at 29, 19 Atl. at 428).[2] Surely, a rule of law simply allocating the burden of proof need not be negated in a pleading by either a denial in the answer or by an affirmative defense. It was thus perfectly proper in this case for appellees to rebut the presumption of interest at trial by showing an agreement that this loan was *not* to bear interest.

Moreover, on the basis of this record, we hold that the presumption of interest was rebutted as a matter of law. Although appellees introduced no testimony on the issue of interest, appellant called appellees' treasurer, as on cross-examination, and elicited this very damaging testimony: "By Mr. Petrella [for appellant]: Q. You mean to say there would have been nothing paid with this loan other than just the principal? A. That is correct, sir. Q. No interest? A. No interest." (Record at 40a.)

Although ample opportunity existed to rebut this testimony that the loan bore no interest, the treasurer's statements remained completely uncontradicted. In fact, this was the only evidence on interest presented by either side. Under such circumstances, we apply the well established principle that uncontradicted testimony, not otherwise incredible, of an adverse witness called as on cross-examination binds the party so calling, in this case appellant. *Capecci v. Liberty*

---

[2] The Court in *Stocker* specifically said that "it was competent for the plaintiff [borrower] to rebut the presumption, by proof that the understanding and agreement of the parties were otherwise." 134 Pa. at 29, 19 Atl. at 428. To the extent that a statement in *Borough of Port Royal v. Graham,* 84 Pa. 426, 429 (1877) holding the existence of interest to be "a conclusion of law from the fact of the loan" means that an *irrebuttable* presumption exists, that language is disapproved.

*Corp.,* 406 Pa. 197, 205, 176 A. 2d 664, 668 (1962);
*Auel v. White,* 389 Pa. 208, 215, 132 A. 2d 350, 354
(1957). Moreover, this rule applies with equal
strength regardless of which side has the burden of
proof on the issue foreclosed by the adverse witness'
uncontradicted testimony. Compare *Capecci,* supra
with *Auel,* supra.[3]

Since the court below properly held that no interest
ran on this loan until the trial ended, all that re-
mains is to pass on appellant's contention that the
March 17 order was improperly entered. In response
to Hodge's assertion that this order was entered with-
out notice to appellant, we need refer only to a letter
from the trial judge to Philadelphia counsel for appel-
lant. In that letter, the judge stated: "For your
information, the proceedings before me were not ex
parte in any sense of the word. This Court has full
confidence in our members and I was informed by Mr.
William C. Beatty [local counsel for appellee] that
Edward M. Seltez [sic], Esquire, your local counsel,
had full knowledge of these proceedings within 24 hours
of Mr. Beatty's discussion with me and the Order [of
March 17] was not filed until after Mr. Seletz was
apprised of the situation."

Appellant maintains that the thrust of this letter
is that Mr. Beatty and the judge had already decided
that the loan would not bear interest before counsel

---

[3] The *Auel* case, like the present one, involved the presence
of a presumption. Plaintiff in a trespass action, having been ren-
dered mentally incompetent as a result of being struck by defend-
ant's car, was entitled to the same presumption of due care af-
forded to a decedent. Nevertheless, this presumption was held
rebutted, as a matter of law, when the defendant, called as on
cross-examination by plaintiff, testified, without contradiction, that
plaintiff was struck as he crossed the center line of the road,
having ventured across the street in the middle of the block with
a clear view of the highway.

for appellant was ever notified. Even if this be true, we believe that the letter more properly indicates that, while the judge may have agreed with Beatty that the loan bore no interest, he refused to file such an order until Mr. Seletz had had notice of the proposed order and opportunity to argue against it. When no such opposition came, the order was properly entered.

The appeal from the order of January 26, 1967 (No. 1, January Term 1968) is quashed. The order of March 17, 1967 (No. 19, January Term 1968) is affirmed.