Joseph R. THOMPSON

v.

**David E. GROSHENS, President Judge of the Court of Common Pleas of Montgomery County and Elmer Lentz.**

**Civ. A. No. 71-2455.**

United States District Court, E. D. Pennsylvania.

April 10, 1972.

Edward J. O'Halloran. O'Halloran, Stack, Quinn & Smith, Philadelphia, Pa., for plaintiff.

J. Shane Creamer, Atty. Gen., Commonwealth of Pa., Dante Mattioni, Deputy Atty. Gen. for Eastern Dist. of Pa., Hermann Rosenberger, II, Asst. Atty. Gen., Bean, DeAngelis, Kaufman & Giangiulio, Edward F. Kane, Leigh P. Narducci, Norristown, Pa., for defendants.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

This is a civil rights action brought against David E. Groshens, the President Judge of the Court of Common Pleas of Montgomery County, Pennsylvania, and Elmer Lentz, the Court's Chief Domestic Relations Officer. The plaintiff, Joseph R. Thompson ("Thompson"), who is a respondent in support proceedings brought against him in that Court by his estranged wife Joan Thompson, seeks declaratory and injunctive relief for alleged violations by the

defendants of his civil rights in connection with those proceedings. He also requests that a three-judge court be convened to declare unconstitutional, either facially or as applied, § 733 of the Pennsylvania Penal Code, 18 Purdon Stat. § 4733, under which the support charges against him were brought.[1] Section 733 is the traditional umbrella for support actions in Pennsylvania.[2] Jurisdiction is asserted under 28 U.S.C. § 1331, § 1334(3) & (4), 42 U.S.C. § 1983, 28 U.S.C. §§ 2281–2284 and 28 U.S.C. §§ 2201, 02. The matter comes before us on the motions of Judge Groshens and Mr. Lentz under Rule 12(b) Fed.R.Civ.P. to dismiss the complaint. For a variety of reasons, we grant their motions. We turn first, however, to a review of the facts set forth in the complaint and the other facts of which we may take judicial notice.

On November 6, 1969, following the filing of Mrs. Thompson's complaint, a hearing was held before Judge Groshens, at which Mrs. Thompson testified, and as the result of which Judge Groshens entered a temporary order requiring Thompson to make support payments to Mrs. Thompson of $80 a week. A final hearing was held on February 4, 1970, during which Thompson completed his testimony and defense; pending oral argument and the submission of briefs, Judge Groshens continued the temporary order, which remained in effect until

1. That statute provides:

"If any husband, or father, being within the limits of this Commonwealth, separates himself from his wife or from his children, or from wife and children, without reasonable cause, or neglects to maintain his wife or children, (1) his wife or children may file a petition, prepared by the district attorney and joined in and consented to by the husband or father, in the court of quarter sessions of the county in which the wife or children reside or in the county wherein the desertion or failure to maintain took place, setting forth the facts relating to the separation from or neglect to maintain his wife or children, or both, whereupon the court, or any judge thereof in chambers, shall enter an order fixing a time and place for hearing; or (2) any magistrate, upon information made before him under oath or affirmation, by his wife or children, or either of them, or by any person, may issue his warrant for the arrest of the person against whom the information shall have been made, and bind him over, with one sufficient surety, to appear at the court of quarter sessions or other court having jurisdiction, there to answer the said charge of desertion.

The said court, after hearing in a summary proceeding, may order the person against whom complaint has been made or petition filed, being of sufficient ability, to pay such sum as said court shall think reasonable and proper for the comfortable support and maintenance of the said wife or children, or both, and to commit such person to prison, there to remain until he shall comply with such order, or give security, by one or more sureties, to the Commonwealth, and in such sum as the court shall direct for the compliance therewith. But in no instance shall the defendant be required in any county of the first class to give security for compliance, or be imprisoned for failure to give security for compliance, unless and until the court finds on substantial evidence, (1) that the defendant is possessed of property, real or personal, in sufficient amount and in such form, as to enable him to give the required security, and (2) that the defendant is likely to dissipate his assets or flee the jurisdiction. In each instance, in which security for compliance is ordered, the court shall enter upon the record the findings on the basis of which the order is made. The court may also issue the appropriate writ of execution against any property, real or personal, belonging to the defendant, and its writ of attachment execution against any money or property to which he may be in any way entitled, whether under what is known as a spendthrift trust or otherwise, which shall not exceed fifty per centum thereof, and shall remain a continuing levy until the order has been paid in full with costs. The person against whom an order is made shall not be entitled to the benefits of any exemption law now in force or hereafter passed."

2. The other viable means of bringing a support action, The Civil Procedural Support Law, 62 Purdon Stat. § 2043.31 et seq. is rarely used.

June 23, 1970, when Judge Groshens entered a final order reducing the weekly support payments from $80 to $60 per week. Thompson appealed this final order to the Superior Court of Pennsylvania, No. 1197 October Term 1970. In his appeal, he challenged not only the trial court's finding of his obligation to provide support, but also the constitutionality of § 733, claiming that it violated the due process clause of the Fourteenth Amendment (the precise nature of the constitutional claims are discussed, *infra*). The Superior Court affirmed Judge Groshens per curiam without opinion on December 10, 1970. Commonwealth ex rel. Thompson v. Thompson, 217 Pa.Super. 874, 272 A.2d 189 (1970). On January 7, 1971, Thompson filed a timely petition for Allowance of Appeal to the Supreme Court of Pennsylvania, again attacking the constitutionality of the Statute. Miscellaneous Docket No. 18, No. 494–A. This petition was denied on August 16, 1971.

On September 9, 1971, Thompson filed with the Montgomery County Prothonotary, pursuant to 28 U.S.C. § 1257(2), a notice of appeal to the United States Supreme Court. The jurisdictional statement which he subsequently filed with the Supreme Court revealed that he was challenging the Desertion and Nonsupport Statute on the same grounds as he did in the state courts. After the notice of appeal was filed (although before the appeal had been perfected by the filing of the jurisdictional statement) a hearing was scheduled before Judge Groshens on a petition which Mrs. Thompson had previously filed in April 1971 seeking an increase in the support order due to allegedly increased medical expenses.

She had sought a hearing on her petition at the time she filed it, but Judge A. Benjamin Scirica of the Montgomery County Court of Common Pleas had ordered the proceedings stayed on the ground that the court had no authority to modify an order from which an appeal had been taken.[3] However, Judge Groshens refused to continue the hearing on Mrs. Thompson's petition which was listed before him on October 19, 1971, and a subpoena was served on Mr. Thompson at the behest of Mr. Lentz with the legend that a bench warrant for his arrest would be issued if he failed to appear.[4]

These latter events precipitated the filing of the present lawsuit. In it Thompson has made essentially the same constitutional allegations as he made before the State Supreme Court and the United States Supreme Court. However, Thompson's principal contention, as he presented it to us, was that the holding of a hearing by Judge Groshens would "interfere with the appellate jurisdiction of the United States Supreme Court".

After Judge Groshens was served with the complaint, he referred it to the Attorney General of Pennsylvania for defense.[5] Nevertheless, sua sponte, he continued the scheduled hearing. At a conference of counsel in chambers, we denied Thompson's request for a temporary restraining order. Defendants thereupon filed their motions to dismiss and we have heard argument and have received briefs with respect to same. On March 6, 1972, the United States Supreme Court dismissed the appeal, and treated it as a petition for a writ of certiorari, which it denied.

3. *See* Hodge v. Mc-Bee Co., Inc., 429 Pa. 585, 240 A.2d 818 (1968); Commonwealth ex rel. Podvasnik v. Podvasnik, 198 Pa.Super. 107, 181 A.2d 843 (1962).

4. At the time Judge Groshens refused applications to continue the hearing, the appeal to the United States Supreme Court had not been perfected. Judge Groshen's unwillingness to continue the hearing may have been predicated upon

this fact (*i. e.*, in a sense, there was no appeal then pending) or upon his disagreement with Judge Scirica's ruling. In view of our disposition of the case, we need not pursue the ramifications of that question.

5. The Attorney General has represented the Judge before us; Mr. Lentz was represented by private counsel.

In addition to alleging that the scheduling of the hearing before Judge Groshens was undermining his right to appeal and interfering with the appellate jurisdiction of the United States Supreme Court, Thompson has framed attacks upon those proceedings before Judge Groshens which resulted in the entry of the final support order which, as we have seen, have been upheld by the Pennsylvania Superior and Supreme Courts. *Inter alia,* Thompson claims to have been deprived of his rights, privileges and immunities secured by the due process and equal protection clauses of the Fourteenth Amendment in violation of 42 U.S.C. § 1983 by:

(1) the arbitrary and capricious entering of the final order contrary to the evidence;

(2) the entering of a temporary order before he (Thompson) had completed his defense; and

(3) the entering of a temporary order which required him to pay over $2,500 before he could appeal.

His claims encompass an attack on the constitutionality of § 733 on the grounds that it:

(1) permits retroactive support orders and gives the court authority to commit a husband to prison if he fails to comply with such an order;

(2) arbitrarily provides different standards for posting security;

(3) arbitrarily eliminates the benefits of any exemption law now in force or hereafter passed; and

(4) arbitrarily discriminates against husbands.[6]

*Inter alia,* Thompson has prayed for the following relief: entry of a temporary restraining order pending the convening of a three-judge court to declare § 733 of the Pennsylvania Penal Code unconstitutional as repugnant to the due process clause of the Fourteenth Amendment, and ultimately the granting of a permanent injunction against its operation and enforcement; a declaration that the actions of Judge Groshens in entering the temporary and final order and scheduling the hearing were arbitrary and capricious and in violation of Thompson's civil rights; and an order vacating the final support order of June 23, 1970. We shall review the various grounds for defendants' motions to dismiss in the discussion which now follows.

■ Looking at the matter first from the vantage point that we did before the Supreme Court dismissed the appeal and denied certiorari, we have been cited to no authority and can find none which: (1) holds or infers that the scheduling of a hearing on a requested modification of a support order because of allegedly changed circumstances while an appeal is pending would constitute an interference with the appellate jurisdiction of the United States Supreme Court; or (2) gives this Court jurisdiction to prevent such interference if it existed.[7] In any event, the Supreme Court has now disposed of the appeal, thereby mooting that aspect of Thompson's claim. When that aspect is removed from the case

---

6. Thompson claims that defendant Lentz violated his civil rights by:
   (1) undermining the appellate jurisdiction of the United States Supreme Court by scheduling the hearing;
   (2) causing a subpoena to be served on Thompson requiring him to appear or be subject to arrest; and
   (3) arbitrarily and capriciously ignoring the order of Judge Scirica.

7. We will assume arguendo that, under the circumstances of this case, a judge and a court official are not immune from a suit for injunctive relief. This question has not been decided by the Supreme Court, although in Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) a suit involving damages, the Court held that the "settled principle" of judicial immunity was not abolished by 42 U.S.C. § 1983. The Court was concerned that judges might be intimidated by the fear of unsatisfied litigants suing them. The argument has been made that the rationale underlying *Pierson* applies equally to suits for injunctions. *See,* e. g., McKay v. Nesbett, 412 F.2d 846 (9th Cir. 1969) aff'g 285 F.Supp. 498 (D.Alaska 1968).

and the balance of Thompson's claim is viewed, it becomes apparent that what he seeks here is collateral review of a case which has been decided by the highest court of a state. This he cannot obtain.

In support of his argument that we do have jurisdiction in the matter, Thompson cites the case of Wood v. Conneaut Lake, 386 F.2d 121 (3d Cir. 1967). This reliance is misplaced; in fact, we read this case as holding to the contrary.[8]

The court there wrote at 125:

"Failing a prerequisite showing of arbitrary action by the state court, the District Court was without original jurisdiction to entertain appellant's suit. His remedy, if any, was to petition the United States Supreme Court for certiorari. That course was followed without success. Furthermore, no statutory authority exists for the District Court's exercise of appellate jurisdiction under the circumstances of this case." (citations omitted).

The proposition that the jurisdiction of the district court is strictly original, and that it may not act as an appellate tribunal for state court decisions hardly needs recitation. Neither does unsuccessful resort through the route of the state and United States Supreme Courts empower the district court to act. *See* Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923);

Brown v. Chastain, 5 Cir., 416 F.2d 1012, cert. den. 397 U.S. 951, 90 S.Ct. 976, 25 L.Ed.2d 134 (1967); Stafford v. Superior Court of California, Etc., 272 F.2d 407, 409 (9th Cir. 1959)[9]; Eitel v. Faircloth, 311 F.Supp. 1160 (S.D.Fla. 1970).

■ In view of the foregoing observations, it becomes appropriate to ask what, if any, case or controversy is before us with respect to which judicial power can be exercised. To be sure, whatever we do, the case of Thompson v. Thompson may well continue on in the Court of Common Pleas of Montgomery County, but what is to be heard is a new episode which certainly is for that court and not for us. While Thompson has sought to invalidate various provisions of § 733, *i. e.*, those dealing with retroactive support, bond, exemption, etc., his allegations have been directed towards that episode of his marital dispute which is now concluded, and which, as we have said, we have no power to collaterally review.[10] We do not construe his complaint (nor could we) as averring that he will be harmed by the allegedly unconstitutional sections of the Act in the next stage of his controversy with his wife, if it eventuates. Thus Thompson has also failed to state a claim cognizable under the Civil Rights Act.

■ To summarize, there is no jurisdiction in the matter;[11] there is no case or controversy before us to adjudicate;

8. Wood was a successful plaintiff in a personal injury case in the Court of Common Pleas of Crawford County, Pennsylvania. The Supreme Court of Pennsylvania, on defendant Conneaut Lake Park, Inc.'s appeal, reversed the judgment of the trial court and entered judgment for the defendant notwithstanding the verdict. Wood then filed suit in the district court, W.D. Pa., seeking to vacate the order of the Pennsylvania Supreme Court claiming that its decision was a violation of the due process clause of the Fourteenth Amendment in that in acting as arbiter of facts it found facts with no support in the record. The district court dismissed finding it had no appellate jurisdiction to review action of the State's highest court and alternatively, if the action was to be treated as an original

one, Wood showed no basis for his allegation of deprivation of due process. The Court of Appeals affirmed.

9. In *Stafford*, the Ninth Circuit wrote: "Constitutional questions inherent in state court adjudications are to be determined therein and are not subject to collateral review in a federal court under section 1331."

10. In fact, Thompson has seemed more concerned with the temporary order which was superseded by the final order.

11. Plaintiff has asserted jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. This statute, however, does not confer jurisdiction where it does not otherwise exist. *See* Longview Tugboat Co. v. Jameson, 218 F.2d 547 (9th Cir. 1955).

and plaintiff has failed to state a claim upon which relief can be granted.[12]

There are two additional grounds for dismissal in addition to the foregoing. So as not to prolong this opinion unduly, we will state them succinctly.

*First.* Mrs. Thompson is a necessary party who has an interest in the controversy and is so situated that disposition in her absence might, as a practical matter, impair her ability to protect that interest. *See* Bendix Aviation Corp. v. Kury, 88 F.Supp. 243 (E.D.N. Y.1950); Hoosier Casualty Co. of Indianapolis v. Fox, 102 F.Supp. 214 (N.D. Iowa 1952). However, she has not been joined as required under Rule 19(a) Fed.R.Civ.Proc.

*Second.* This is not the type of case in which we would be justified in interfering with a state court proceeding. 28 U.S.C. § 2283. *See, inter alia,* Douglas v. City of Jeannette, 319 U.S. 157, 63 S. Ct. 877, 87 L.Ed. 1324 (1943); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

In view of the foregoing analysis, we deny Thompson's motion to convene a three-judge court and will grant the defendants' motions to dismiss.

---

12. Defendants' argument that Thompson has not pleaded the requisite jurisdictional amount must however be rejected in view of the recent decision of the Supreme Court in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424, filed March 23, 1972.