Commonwealth *v.* Johnson, Appellant.

Submitted April 15, 1968. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*James E. Davis* and *Thomas DeWitt*, Public Defenders, for appellant.

*Roy A. Gardner*, for appellee.

OPINION BY MR. JUSTICE ROBERTS, October 3, 1968:

In 1954 appellant William John Johnson went to trial before a judge and jury on an indictment charging him with murder in the first degree. Near the close

of the Commonwealth's case, the prosecution introduced into evidence two confessions whose existence was unknown to both of appellant's counsel until that very moment. Defense counsel thereupon requested a recess, conferred with their client briefly in the court ante-room, then returned to announce that the plea would be changed to guilty. Subsequently, appellant was found guilty of murder in the first degree, and sentenced to life imprisonment. No direct appeal was taken.

Once in prison, Johnson began flooding the Court of Oyer and Terminer of Wyoming County with hand drawn habeas corpus petitions. He filed a total of eight, all of which were dismissed without hearing. Finally, in 1965 appellant filed his ninth pro se petition. This one went undecided for over a year, before it was finally dismissed; in its stead was substituted a petition under the Post Conviction Hearing Act. Counsel was appointed, and an evidentiary hearing held. Appellant contended that his guilty plea was motivated by an involuntary confession, and that the plea itself was not knowingly and intelligently entered. Relief was denied and appellant appealed to this Court.

Apparently not content to await the outcome of his appeal, while it was pending before us Johnson inundated the lower court with four more habeas petitions all of which were dismissed without hearing. When the fourth one was dismissed, however, appellant requested counsel (the same one who filed his previous appeal to this Court) and instructed him to prosecute a second appeal. This was done, resulting in appellant having two cases before us at the same time. Accordingly, counsel petitioned this Court to have Johnson's first appeal continued, alleging that the second one, involving solely an alleged violation of appellate rights under *Douglas v. California,* 372 U.S. 353, 83 S. Ct.

814 (1963), required our immediate attention. When the Commonwealth did not oppose this request, a continuance was granted.

Subsequently, however, the Commonwealth petitioned to have the continuance vacated and the two appeals consolidated. This petition was opposed by appellant, who continued to insist that the *Douglas* claim should be heard first. On February 22, 1968, this Court, believing that no prejudice would attend the consolidation, granted the Commonwealth's motion. Accordingly, both of Johnson's appeals are before us at this time. We shall discuss them in chronological order.

At the evidentiary hearing on the first of Johnson's two petitions under the Post Conviction Hearing Act, appellant testified that the confessions obtained by the police resulted from a combination of drugged food and appellant's own mental condition. The court below quite permissibly rejected Johnson's tale of drugged hamburgers and coffee, especially given the testimony of one of the original interrogating officers, who stated at the collateral hearing that he had purchased all the food consumed during the interrogation session, that he observed it being prepared, and that no drugs were placed in any of the hamburgers or cups of coffee. In fact, the officer testified that he himself was going to eat the food which appellant eventually ate, but that Johnson took it when the officer briefly left the room.

Appellant also contended that his own mental condition rendered his uncounseled confession inadmissible. There is no doubt that Johnson has had a long history of mental examinations. However, until 1966 none of these revealed any substantial evidence of mental disease or retardation.[1] Appellant's argument rests

---

[1] Soon after appellant's post-conviction petition was filed, counsel also requested a sanity commission to examine Johnson

largely upon the following statement made by the trial judge at the time of sentencing: "It must be plain to the counsel and to the jury and to those who are here in attendance that this defendant was as plastic as a child in the hands of those who obtained these confessions. He, apparently to me has no conception of the danger which has been hanging over him during the past few days. He seems to me to be in that state of mind that he can be of little help to counsel in his defense. This man is not legally insane, but in our judgment he is a mental case of low, confused mind." (Trial Record at 277.)

In *Commonwealth ex rel. Hilberry v. Maroney*, 417 Pa. 534, 207 A. 2d 794 (1965) we were faced with a similar statement by the trial judge. Although we indicated that this statement, together with the reports of four examining physicians, could be enough to vitiate a guilty plea, *Hilberry* in no way controls this case. Hilberry's marginal mental condition was verified by four different medical doctors, all of whom placed the defendant's mental age between 8 and 12 years. One of the four, the only psychiatrist in the group, even reported that Hilberry was unable to tell right from wrong.[2] By contrast, the present appellant was the

with a view toward recommitting him to a mental institution. This commission reported that appellant was insane. Of course, appellant's possible mental condition in 1965 carries little weight when passing upon his status in 1953. Moreover, the 1965 commission report was rejected by the court below which, after conducting an extensive hearing on the commitment, as well as a lengthy post-conviction hearing, concluded that Johnson was sane.

A commission in 1940 also reported appellant to be insane. However, the 1953 commission found, largely on the basis of Johnson's own testimony, that the 1940 diagnosis was the product of feigned insanity, carried on by appellant in the hope that it would get him out of prison.

[2] Even in the face of this evidence, however, we did not hold that Hilberry's guilty plea and sentencing proceeding were invalid

subject of a sanity commission report dated only a month before his trial. It was the unanimous opinion of this commission, composed of two doctors and a lawyer, that Johnson was sane, responsible for his own behavior, and of average intelligence.[3] When it is considered that this report was *accepted* by the same judge who made the quoted statement, supra, we find little reason to accord much weight to this statement. Finally, we note that the remarks of the trial judge were made primarily to justify his "merciful" life sentence in the face of an atrocious crime (victim was a 94 year old woman who was strangled during an apparent robbery attempt) which was the subject of great public attention in the small community where it occurred.

Absent proof that appellant's confessions were the product of either drugs or mental deficiency, there is nothing left to support an involuntariness claim. John-

---

as a matter of law. Instead, this Court merely remanded the case for an evidentiary hearing.

[3] Although it is true that this commission examined appellant to determine whether he was competent to stand trial, not to ascertain his mental condition at the time he confessed, nevertheless the findings of the commission, made from examinations of Johnson conducted only a few months after the confessions were given, are certainly entitled to great weight. This becomes even more obvious when the conclusions of the commission are studied. The broad language used would support not only a finding that appellant could aid in his own defense, but also that he had sufficient contact with reality to make his confessions voluntary. One of the examining physicians reported: "This man [appellant] is not psychotic and is therefore responsible for his own behavior.... While his intelligence is probably low, it is within the average range." The other doctor stated: "At no time do I find any concrete evidence that Mr. Johnson was ever psychotic or insane.... He is sane medically, knows the difference between right and wrong and the serious nature of his crimes." Finally the attorney on the commission said of appellant: "the defendant is a confirmed criminal of lower than average intelligence, but . . . the defendant is not a mental defective, neither is he a moron, idiot or imbecile."

son was interrogated only twice, for periods of twenty minutes and fifty-three minutes respectively, no threats were made, no violence was used, and the confession had been reduced to writing less than two hours after appellant arrived at the police station. These facts do not even approach coercion, let alone the *degree* of coercion needed to render a confession involuntary. Compare *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A. 2d 426 (1968) with *Commonwealth ex rel. Joyner v. Brierley,* 429 Pa. 156, 239 A. 2d 434 (1968). See also *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 1879 (1961); *Commonwealth v. Baity,* 428 Pa. 306, 237 A. 2d 172 (1968) and cases discussed therein.

Merely deciding that appellant's confessions were voluntary does not, however, dispose of his guilty plea contention; for in addition to arguing that the plea was primarily motivated by inadmissible confessions, Johnson also takes issue with the voluntariness of the plea itself. According to appellant, the conference in the ante-room lasted only a few minutes. Both counsel expressed the strong view that unless appellant changed his plea, he would receive the death sentence. Although Johnson admits that the thought of a death penalty frightened him, he steadfastly maintains that he never consented to the entry of a plea. When he was asked at the hearing below why he did not object when counsel formally entered the plea for him, appellant testified that because he misunderstood the nature of a guilty plea, he mistakenly believed that his lawyers had the right to enter the plea even against his will in light of the confessions, and further that the plea could result in a conviction of only murder in the second degree.

Although appellant's testimony, if believed, would certainly entitle him to relief, the court below stated

in its opinion that Johnson's story was not acceptable. Given the fact that the burden of proof is on appellant to show that his guilty plea was improper, *Commonwealth v. Grays*, 428 Pa. 109, 237 A. 2d 198 (1968); *Commonwealth v. Hill*, 427 Pa. 614, 235 A. 2d 347 (1967), relief could be denied even if the only testimony introduced at the hearing came from petitioner, and even if that testimony bespake the most grievous of errors.[4] Quite simply, collateral relief in a case such

---

[4] In *Commonwealth v. Grays*, supra, for example, only petitioner and his wife testified at the collateral hearing. Grays maintained that he pleaded guilty because he was told of an improper "deal" made between the judge and defense counsel that a plea would result in a conviction of voluntary manslaughter. (Grays eventually was found guilty of murder in the first degree.) Petitioner also testified that he had been promised a new trial if a sentence greater than six years was imposed. Petitioner's wife testified that she had been told by counsel that a new trial could only be obtained if her husband pleaded guilty and was convicted. On a not guilty plea, no new trial could be obtained. Even though the Commonwealth offered no testimony to rebut these versions of the plea, relief was denied because the hearing judge did not believe either Grays or his wife. In affirming this denial, we specifically rejected appellant's contention, that "where the prisoner's testimony is sufficient, if believed, to constitute the basis for a finding that his plea was not constitutionally valid, the burden shifts to the Commonwealth to rebut this testimony upon penalty of issuance of the writ." 428 Pa. at 111, 237 A. 2d at 200.

Cases such as *Grays* and the present one merely serve to underscore the pressing need for the trial judge, as well as counsel on both sides, to make certain that the record contains some colloquy sufficient to show an appellate court that the guilty plea was entered with the full understanding and cooperation of the defendant. However, we continue to adhere to the view expressed in *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 237 A. 2d 196 (1968), and before that in *Commonwealth ex rel. Barnosky v. Maroney*, 414 Pa. 161, 199 A. 2d 424 (1964), that a silent record *alone* is not sufficient to invalidate a guilty plea. We re-affirm these cases because of the very practical consideration that most currently contested guilty pleas were entered long before judges and lawyers were made aware of the importance of the on-the-

as this requires either that the petitioner's testimony be believed, or that it be corroborated by some other source which is accepted as truthful.

Moreover, in the present case we need not rely solely on the decision of the hearing judge to disbelieve appellant's version of the plea, since the record also contains several damaging admissions by Johnson during cross-examination, as well as the testimony of one of appellant's trial counsel. Although appellant testified on direct examination that he did not comprehend the meaning or nature of a guilty plea, he admitted on cross-examination that he had previously pled guilty in 1940 to crimes of larceny and burglary. Johnson confessed that in 1940 he *did* understand the plea of guilty to mean that the pleader was telling the court that he had in fact committed the crime charged. Furthermore, Johnson told of having had past experiences in pleading not guilty. (Post Conviction Hearing Record at 266-69.) We find it difficult to believe, just as the court below found it difficult, that appellant could know so much about guilty pleas in 1940, yet forget it all 14 years later, especially given the fact that 12 of those 14 years were spent in custody, where talk of legal phrases and concepts so permeates the atmosphere.

Trial counsel also testified below. As he recalled appellant's trial, after the initial shock of hearing the Commonwealth introduce the confessions into evidence, and after objecting unsuccessfully to their admission, he requested a recess. According to counsel's version, the ensuing ante-room conference lasted approximately

---

record colloquy. Of course, given the present state of the law, as evidenced not only by the decisions of this Court, but also by the American Bar Association Project on Minimum Standards for Criminal Justice (Pleas of Guilty, page 25), there is absolutely no reason whatsoever why every future guilty plea should not be fully supported on the record.

fifteen minutes, during which time the nature of the guilty plea was explained to appellant, as well as the distinct possibility of a death sentence if the case went to the jury. It was counsel's recollection that Johnson consented to the plea because of his fear of the electric chair. Appellant's story about his lack of consent was flatly contradicted by this attorney who testified that at no time during the conference did Johnson voice any disagreement with the decision to change the plea. He concluded his testimony by saying that under no circumstances would he have entered a guilty plea for his client without having first secured appellant's consent. On the basis of this testimony, as well as the admissions of appellant himself, we conclude that Johnson did know the meaning of a guilty plea, and that the decision to enter this plea was in fact his own choice, not one forced upon him by counsel.[5] As such, this plea comports with the "personal participation" requirements of this Court, *Commonwealth ex rel. Kerekes v. Maroney*, 423 Pa. 337, 342, 223 A. 2d 699, 702 (1966), and of the Supreme Court of the United States, *Brookhart v. Janis*, 384 U.S. 1, 7, 86 S. Ct. 1245, 1248 (1966).

We now turn to Johnson's second appeal which comes to us following the denial, without hearing, of a petition for relief under the Post Conviction Hearing Act wherein appellant maintained that he was never

---

[5] Counsel did think it somewhat "irrational" that Johnson, during the ante-room conference, asked whether they had "funny books" at the prison. Although we also consider the presence of comic books in prison a somewhat irrelevant consideration in deciding how to plead to a murder charge, on the basis of Johnson's other testimony, as well as that of trial counsel, we are not convinced that appellant's concern over prison literature demonstrates that he did not comprehend the nature of his plea. We agree with trial counsel that a fear of the death penalty, not the availability of "funny books" in prison, motivated Johnson's guilty plea.

told of the right to appeal or the right to free appellate counsel if indigent.[6]  If there be any single proposition of law in the rapidly evolving field of post-conviction remedies so well established that it rates the title "hornbook" it is that a petition under the Post Conviction Hearing Act must not be dismissed without an evidentiary hearing if it alleges facts which, if true, would entitle petitioner to relief.  Section 9 of the Post Conviction Hearing Act specifically requires a hearing under such circumstances, and this Court has held that section 9 merely codifies prior habeas corpus law.  *Commonwealth ex rel. Harbold v. Rundle*, 427 Pa. 117, 223 A. 2d 261 (1967).[7]

---

[6] In the brief filed for appellant by counsel in this consolidated appeal, there is no argument on the *Douglas* issue.  The failure of counsel to press the *Douglas* claim, however, should not be imputed to his client for two reasons.  First, the erroneous assumption was made by counsel that our granting of the Commonwealth's motion to consolidate operated as an adverse adjudication of Johnson's *Douglas* claim.  Actually, we agreed to hear appellant's guilty plea arguments, rather than remand immediately for a *Douglas* hearing, *only* because a finding that the plea was invalid would have necessitated a new trial thus mooting the alleged denial of the right to appeal.  Our decision to consolidate in no way operated as an adjudication on the merits of any of appellant's arguments.  Second, appellant himself has preserved the *Douglas* issue by raising it in a handwritten brief filed before us.

[7] Of course, the mere allegation of a legal conclusion, without any factual support, will not entitle petitioner to a hearing.  See, e.g., *Commonwealth v. Snyder*, 427 Pa. 83, 102, 233 A. 2d 530, 540 (1967), where we held that bald allegations of "perjured testimony" and "obstruction of the right to appeal" were legal conclusions only.  As such, they did not require an evidentiary hearing.  By comparison, although appellant in the present case also alleged that his right to appeal was obstructed, Johnson recited *facts* to support this allegation, viz., that trial counsel never advised him of any appellate rights.

As insurance, however, that meritorious claims will not be summarily dismissed without hearing simply because the petitions were drafted by prisoners, often accustomed to thinking only in terms

However, even though appellant did allege facts which if proven would have entitled him to relief, the court below could still have denied Johnson an evidentiary hearing if it found that the right to litigate the issues raised in the petition had been waived under section 4 of the Post Conviction Hearing Act. *Commonwealth v. Snyder*, 427 Pa. 83, 233 A. 2d 530 (1967). Moreover, had the court below found such a waiver by virtue of the fact that appellant's first Post Conviction Hearing Act petition failed to raise the *Douglas* issue even though Johnson had counsel and the petition long post-dated the *Douglas* decision, we would have no difficulty affirming the denial of relief. Unfortunately, the opinion of the court below specifically recited that relief was being denied *solely* because the court had no jurisdiction.[8] This, we believe, was error.

The post-conviction judge took the position that since appellant's first Post Conviction Hearing Act petition was pending before this Court at the time the second one was filed, the court lacked jurisdiction over the subject matter. While it is of course true that a lower court loses jurisdiction over a case once it has received a writ of certiorari directing that the record be sent to an appellate court, *Hodge v. Me-Bee Co., Inc.*, 429 Pa. 585, 590 n.1, 240 A. 2d 818, 821 n.1

of legal conclusions, section 7 of the Post Conviction Hearing Act cautions that no petition can be dismissed for want of particularity unless petitioner is first given an opportunity to clarify the petition by supplying the requisite factual allegations. See *Commonwealth v. Stokes*, 426 Pa. 265, 232 A. 2d 193 (1967). This section becomes especially meaningful in light of section 12 which requires that counsel be appointed for indigent petitioners who so request.

[8] This conclusion was reached below in spite of the fact that the judge, in his opinion, viewed Johnson's petition as *requiring* a hearing but for the jurisdiction issue. On remand, of course, the court will not be bound by this determination since it was made before the Commonwealth had an opportunity to argue the waiver issue.

(1968), this rule has no application to successive petitions under the Post Conviction Hearing Act, since each petition is a *separate* "case." Although the petition may be *dismissed* under proper circumstances either because it presents issues already litigated in a prior petition, or because the failure to litigate the present issues in a prior petition operates as a waiver, nevertheless the *jurisdiction* of the court over each petition is assured by statute, whenever these petitions are filed. Section 5 of the Post Conviction Hearing Act provides:

"Any person who desires to obtain relief under this act may initiate a post-conviction proceeding by filing a petition . . . with the clerk of the court in which he was convicted and sentenced which *said court is hereby granted jurisdiction* to hear and determine same. *He may file a petition at any time.* . . ." (Emphasis supplied.) Act of January 25, 1966, P. L. (1965) 1580, §5, 19 P.S. §1180-5 (Supp. 1967).

If the court below felt unable to adjudicate appellant's *Douglas* claim without having Johnson's entire case record before it, the proceedings could certainly have been continued until the first appeal was decided by this Court and the record returned. To have dismissed for want of subject matter jurisdiction, however, contravened the language of section 5 of the Post Conviction Hearing Act.

In its brief before this Court on the *Douglas* issue, counsel for the Commonwealth strenuously argues the presence of a section 4 waiver. If, on remand, the court below agrees with this contention, an order should be entered dismissing the petition. If, however, appellant can show the presence of "extraordinary circumstances" justifying his failure to raise the *Douglas* issue in his first Post Conviction Hearing Act proceeding, then an evidentiary hearing must be held since ap-

pellant alleged, as a fact in his petition, that court-appointed trial counsel told him nothing about the right to appeal.[9]

The order of the Court of Oyer and Terminer of Wyoming County in appeal No. 302, January Term, 1967 is affirmed. The order of that court in appeal No. 83, January Term, 1968 is vacated and the record remanded for further proceedings consistent with this opinion.

Mr. Chief Justice BELL concurs in the result.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

[9] Because section 4 of the Post Conviction Hearing Act creates a presumption that the failure to raise an issue is a knowing and understanding failure sufficient to constitute a waiver, the burden of proof on remand will be upon appellant to show why the *Douglas* issue was not raised in his first Post Conviction Hearing Act proceeding. But, appellant will *not* be called upon to demonstrate why the *Douglas* issue was not raised in any of his post-1963 *uncounseled* habeas petitions. This result is dictated by our holding in *Commonwealth v. Mumford*, 430 Pa. 451, 243 A. 2d 440 (1968) that the section 4 presumption of waiver, although held constitutional in *Commonwealth v. Satchell*, 430 Pa. 443, 243 A. 2d 381 (1968), will not be applied to proceedings in which petitioner was unrepresented. Should the Commonwealth, therefore, wish to show that appellant's *uncounseled* habeas petitions work a section 4 waiver, the burden will be with *it* to prove a knowing and intelligent waiver. See *Commonwealth v. Kizer*, 428 Pa. 99, 236 A. 2d 515 (1967).

Should appellant show himself entitled to an evidentiary hearing on the *Douglas* claim, then of course the burden of proof will be upon the Commonwealth to establish a knowing and intelligent waiver of the right to appeal. This is so because the trial record is silent on the issue. *Commonwealth v. Wilson*, 430 Pa. 1, 241 A. 2d 760 (1968).