327 A.2d 124
COMMONWEALTH of Pennsylvania
v.
William John JOHNSON, Appellant.

Supreme Court of Pennsylvania.
Argued Nov. 30, 1973.
Decided Oct. 16, 1974.

David P. Posatko, Legal Aid Services, Scranton, for appellant.

James D. Crawford, Sp. Asst. Deputy Atty. Gen., Marc Kapustin, Deputy Atty. Gen., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

On January 21, 1954, the appellant pleaded guilty to the murder of Johanna Kutz in Tunkhannock, Wyoming County, Pennsylvania, and was convicted of murder in the first degree. On the same day, he was sentenced to life imprisonment, but no post-trial motions were filed, and no appeal was taken. The appellant, nevertheless, attacked his conviction in numerous collateral petitions, one of which, filed pursuant to the Post Conviction Hearing Act,[1] resulted in an appeal to this Court: *Commonwealth v. Johnson*, 431 Pa. 522, 528, 531, 246 A.2d 345 (1968). We determined, in that decision, that the plea of guilty was both voluntary and intelligent, but we remanded the case for an evidentiary hearing as to whether the appellant had been informed of his right to appeal (431 Pa. at 535, 246 A.2d 345). The remanded petition was denied by the lower court on July 14, 1969. Instead of appealing that order, another PCHA petition was filed, but this was denied without a hearing on August 4, 1969.

1. Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180-1 et seq.

The appellant next sought federal habeas corpus relief, resulting in a decision by the Court of Appeals for the Third Circuit to stay federal proceedings pending an appeal nunc pro tunc from the order of July 14, 1969. *United States ex rel. Johnson v. Cavell*, 3 Cir., 468 F.2d 304, 308 (1972). It was subsequently adjudged, in an order of the Court of Common Pleas of Wyoming County dated March 6, 1973, upon stipulation of the Commonwealth, that the appellant had been denied his right to appeal his conviction. We granted leave to appeal nunc pro tunc.[2]

Since the appellant pleaded guilty to the charge of murder, the issues reviewable on an appeal from his conviction of murder in the first degree are limited to the voluntariness of the plea, the legality of the sentence, the jurisdiction of the trial court, the effectiveness of counsel, and the sufficiency and admissibility of the evidence to raise the crime to the level of first degree. *Commonwealth v. Hill*, 457 Pa. 1, 319 A.2d 886, 890 (1974); *Commonwealth v. Robinson*, 442 Pa. 512, 514, 276 A.2d 537 (1971), and cases cited. As mentioned above, we have already determined that the appellant's

2.  No post-trial motions have been filed as a prelude to this direct appeal. Such motions should be filed and passed upon prior to the taking of any appeal, including an appeal from a conviction arising from a guilty plea. *Commonwealth v. Starr*, 450 Pa. 485, 491–492, 301 A.2d 592 (1973); *Commonwealth v. Hollenbaugh*, 449 Pa. 6, 8 n. 1, 295 A.2d 78 (1972). This is true also with respect to direct appeals which are allowed as though timely filed. *Commonwealth v. Robinson*, 442 Pa. 512, 515 n. 2, 276 A.2d 537 (1971). *See also* Rule 1123, Pa.R.Crim.P., 19 P.S. Appendix, adopted June 8, 1973. This rule became effective after the present appeal was taken. In view, however, of the tortuous course of collateral proceedings in this case, both before and since the prior appeal to this Court (*see* our Opinion at 431 Pa. 522), we have decided to refrain from remanding the case yet again for further action at the trial level. This decision on our part is taken in light of the obligation which in any event rests upon this Court, in an appeal from a conviction of murder in the first degree, to review both the law and the evidence "to determine whether the ingredients necessary to constitute murder in the first degree shall have been proved to exist". Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187.

plea was voluntary. Further, once the trial court determined the degree of guilt to be murder in the first degree, life imprisonment was, of course, a legal sentence.[3] Consequently, the only issue remaining to be adjudicated, and the only one raised on this appeal, is whether the evidence was sufficient to support that determination. To that we now turn.

The evidence upon which the trial judge determined the appellant's guilt to be murder in the first degree was that presented to the jury following the appellant's initial plea of not guilty. After the third day of trial, the appellant withdrew his initial plea and pleaded guilty to murder. Counsel for the appellant then agreed that the evidence adduced at trial be considered in determining the degree of guilt and the imposition of sentence.[4] That evidence indicated that the victim, an elderly woman, was found in her home lying dead with an electric cord around her neck. The cord, which had been cut from a lamp in the house, was tied to a staircase bannister, lifting her head off the floor. The decedent had suffered blows to the side of the head, but death was caused by strangulation.

Numerous witnesses placed the appellant near the decedent's house when the crime was committed. Blood stains and hair on the appellant's clothing were identified with the blood and hair of the decedent, and the appellant was seen with an object later identified to be a door handle which had been removed from the decedent's kitchen door. Shortly after the crime, the appellant appeared at a local bank, attempting to cash a check bearing the decedent's shaky signature. The decedent made regular use of her checking account and had a current

3. Act of June 24, 1939, P.L. 872, § 701, 18 P.S. § 4701 (now superseded by the Crimes Code, Act of December 6, 1972, P.L. No. 334, 18 P.S. § 2502).

4. This same procedure was followed, for example, in the case of *Commonwealth v. LaCourt,* 448 Pa. 86, 88, 292 A.2d 377 (1972).

balance of $25.64. The check was made out in the amount of $800, and was dated April 16, 1953, the day of the killing; the appellant claimed that he had received the check in exchange for furniture.

Additionally, the Commonwealth presented two statements made by the appellant shortly after his arrest. According to the statements, the appellant knocked at the door of the decedent's home, and upon being admitted, asked for some money. The decedent explained that her money was in the bank. The appellant then threatened to kill her unless she made out a check to him for $800. After writing the check, the decedent stated that she intended to contact the authorities, whereupon the appellant proceeded to choke her. He next cut an electric cord from a table lamp and tied it around the decedent's neck. He dragged the decedent to the staircase, and tied the end of the cord to the bannister. Upon leaving the house, he straightened the rugs and the decedent's clothing and removed the kitchen door handle because it contained his fingerprints.

The appellant stated that he had gone to Mrs. Kutz's house because his girlfriend needed $200, and that he killed the decedent because he feared that she would report the robbery. The decedent was still breathing when the cord was placed around her neck; the cord was so placed in order to strangle the decedent who died before the appellant left her home.

There can be no doubt that the trial court was warranted in finding that the killing here involved rose to murder in the first degree. In the first place, it plainly occurred during the perpetration of a robbery, and is governed by the felony murder rule. Act of June 24, 1939 P.L. 872, § 701, as amended, 18 P.S. § 4701. *Commonwealth v. Yuknavich*, 448 Pa. 502, 506, 295 A.2d 290 (1972); *Commonwealth v. Redline*, 391 Pa. 486, 495, 137 A.2d 472 (1958). Even were there doubt about the robbery, there was adequate evidence of specific intent to

take the life of another human being to support a conviction of murder in the first degree. *Commonwealth v. Mosley,* 444 Pa. 134, 139, 279 A.2d 174 (1971); *Commonwealth v. Hornberger,* 441 Pa. 57, 61, 270 A.2d 195 (1970); *Commonwealth v. Ewing,* 439 Pa. 88, 91, 264 A.2d 661 (1970). The admitted acts of placing a knotted cord around the neck of an elderly woman and so rigging it as to strangle are consistent with no other interpretation. If it were needed, the appellant's voluntary statement that killing was his objective in doing these acts would serve to allay any lingering doubt. The appellant's contention that he lacked capacity to form a deliberate, premeditated killing because he was reacting to pressures from his girlfriend and to the decedent's threat to notify the police was found unconvincing by the trial court. Viewing the evidence in the light most favorable to the Commonwealth,[5] we certainly cannot say that this was error.

Being satisfied that the conviction of murder in the first degree is fully supportable on either the theory of felony murder or non-felony murder, we affirm the judgment of sentence.

5. *Commonwealth v. Carbonetto,* 455 Pa. 93, 95, 314 A.2d 304 (1974); *Commonwealth v. Clark,* 454 Pa. 329, 331, 311 A.2d 910 (1973).