Commonwealth *v.* Walter, Appellant.

Curtin et al. Appeals.

434

Submitted November 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Allen N. Brunwasser*, for appellants, petitioners.

*Robert F. Hawk*, First Assistant District Attorney, and *John H. Brydon*, District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., April 22, 1976:

These appeals were brought by the parents of two young men who were killed when struck by a car driven by William F. Walter. Two appeals were brought from orders of the lower court denying petitions to replace the district attorney with a private counsel employed by the parents and one appeal was from the judgment of sentence imposed on William Walter. We affirm the lower court's ruling on all these matters.

According to the sketchy facts testified to at the guilty plea hearing in this case, it appears that the defendant, William Walter, was driving north on a highway in Butler County on February 16, 1974. A group of young men were walking north on the opposite side of the highway facing southbound traffic when defendant's car drove into their midst and killed four of them. The defendant was at the scene when the state police arrived, and he stated to them that he did not know how the accident occurred. He also stated he had consumed four beers in the four hours preceding the incident. The police concluded that he was not intoxicated without administering any breath, blood or urine tests. The defendant carried liability insurance for $100,000.00 which, although not adequate, is over the minimum required.

A criminal complaint against the defendant was brought by the investigating state policeman and an indictment was returned for four counts of involuntary manslaughter.[1] The parents of one of the victims, who were deeply interested in the prosecution, retained private counsel to participate in the proceedings. Apparently, neither the counsel nor the parents were ever informed of any plea negotiations. On the date set for trial, June 28, 1974, the defendant pled guilty to one count of involuntary manslaughter pursuant to the terms

---

1. Act of December 6, 1972, P.L. 1482, No. 334, §1, 18 Pa.C.S. §2504.

of a negotiated plea bargain which included, among other things, the agreement that the sentence would not exceed four years probation. The court accepted the plea subject to a presentence investigation and report.

On July 26, 1974, the parents of three victims[2] filed a petition, under the criminal caption, term and number of the Walter case, calling for the replacement of the district attorney as provided for by the Act of August 9, 1955, P.L. 323, §1409, 16 P.S. §1409[3] and asserting that the plea bargain was not justified. It was contended in the petition that the evidence supported conviction on all four counts of involuntary manslaughter and that the maximum penalty of twenty years imprisonment and $40,000.00 fine could be imposed. A motion to dismiss the petition was filed by the district attorney's office, and in response, an answer to the motion was filed by the petitioners. The lower court then entered an order together with a memorandum opinion dated December 2, 1974 denying the petition without conducting a hearing. The petitioners appealed this denial to the Supreme Court and on December 20, 1974 certiorari was filed. On the same day a motion for supersedeas was filed in the lower court which stated that because of the appeal taken by the petitioning parents, the court had no jurisdiction to proceed with the criminal case against William Walter. Also on December 20, a second petition, virtually identical to the first petition but this time on behalf of three fathers as administrators of the victims' estates, was filed.

On December 23, 1974, the court dismissed the

---

2. One set of parents represented in the petition below has since withdrawn from the appeals.

3. The petitioners also requested that the court invoke other statutes against the district attorney, specifically the Act of August 9, 1955, P.L. 323, §1405, 16 P.S. §1405; the Act of April 9, 1929, P.L. 177, art. IX, §907, 71 P.S. §297; and the Act of May 2, 1905, P.L. 351, §§1-2, 71 P.S. §§817-18. The failure to enforce these statutes, however, was not appealed.

administrators' petition and denied the motion for supersedeas. On December 30, 1974, the defendant was sentenced over the objection of the parents' counsel according to the terms of the plea bargain: to pay the costs of prosecution, a fine of $500.00 and to be placed on probation for four years. In addition, his license to drive was to be suspended for a period determined by the Bureau of Traffic Safety. Both the sentence and the denial of the second petition for removal of the district attorney were separately appealed to the Supreme Court. The entire matter including all three appeals was then transferred to this Court and consolidated.

In their brief to this Court the petitioners press three arguments. First they contend that they have standing to invoke the Act of August 9, 1955, P.L. 323, §1409, 16 P.S. §1409 for removal of the district attorney. In their second point they suggest that a hearing on the question of removal was required, and finally they note that the remedy for the errors of the lower court in this regard would be to set aside the sentence and remand the case to allow for a development of facts before resentencing.

Initially, we conclude that the petitioning parents do not have standing under the Act of August 9, 1955, P.L. 323, §1409, 16 P.S. §1409, which reads as follows: "If any district attorney shall neglect or refuse to prosecute in due form of law any criminal charge regularly returned to him or to the court of the proper county, or if at any stage of the proceedings the district attorney of the proper county and the private counsel employed by the prosecutor shall differ as to the manner of conducting the trial, the prosecutor may present his petition to the court of the proper county, setting forth the character of the complaint, and verify the same by affidavit. If the court shall be of the opinion that it is a proper case for a criminal proceeding or prosecution, it may direct any private counsel employed by such prosecutor to conduct the entire proceeding, and where an indictment is

necessary, to verify the same by his own signature, as fully as the same could be done by the district attorney."

The petitioners have argued that under this statute, as representatives of the victims, they should be able to demand the removal of the district attorney when his method of prosecution differs from that which they would pursue. The Act of 1955 has not been widely interpreted, but its predecessor, the Act of March 12, 1866, P.L. 85, §1, has been applied in *Commonwealth v. McHale*, 97 Pa. 397 (1881) to appoint a private prosecutor to act in place of the district attorney. In that case, certain individuals were charged with election fraud in an information made by a private party. When the district attorney, who had been the successful candidate in the fraudulent election and for whose benefit the fraud was allegedly perpetrated, refused to sign the bills of indictment, the individual who had initiated the action against the defendants filed a petition requesting that the counsel employed by the private prosecutor be appointed to conduct the proceeding. In upholding the granting of this petition, the Supreme Court said "[i]t would ... have been a breach of professional and official propriety for him to have acted as district attorney in these cases. ... And where he neglects or refuses to act, or where, from the circumstances of a given case, it is improper and indelicate for him to act, it is competent for the legislature to afford a remedy." *Id.* at 406.

In the present case the petitioners are not private prosecutors; they did not make a criminal complaint against the defendant.[4] Nor are they the victims of the

---

4. The complaint was actually made by a state police officer on March 4, 1974, the incident having occurred on February 16, 1974. The petitioners could have brought a private complaint under Pa.R.Crim.P. 133 (B), which complaint would have been submitted to the district attorney for approval. Upon the district attorney's approval, the complaint would be transmitted to the issuing authority and the criminal process would be set in motion against the defendant. Thus the decision to prosecute would still be initially in the hands of the district attorney. If the private complaint is disapproved by the district

criminal conduct. Furthermore, this is not a case where the district attorney neglected or refused to prosecute. On the contrary, he obtained a guilty plea to involuntary manslaughter in a case where the defense might well have convinced a fact finder that the deaths were the result of an accident in which gross negligence or recklessness could not be attributed to the defendant. Act of December 6, 1972, P.L. 1482, No. 334, §1, 18 Pa.C.S. §2504. We cannot conclude that any member of the public who takes an especial interest in bringing alleged criminals to justice can demand the replacement of a district attorney when a guilty plea is negotiated by invoking the Act of 1955. The petitioners in the present case have no more direct interest in the prosecution of this defendant than a member of the general public.

Even if the petitioners did have standing to petition for the replacement of the district attorney for negotiating a plea agreement instead of trying the case, the posture of this case compels the conclusion that the lower court acted properly in denying the petition. The lower court in making its decision considered the A.B.A. Project on Standards for Criminal Justice, Standards Relating to Pleas of Guilty §§1.8, 3.1 (Approved Draft 1968) and carefully weighed such factors as the relative weakness of the Commonwealth's case against the defendant; the cooperativeness of the defendant in ensuring prompt, certain correctional measure to himself, *id.* §1.8(a) (i); the correctional measure best adapted for the rehabilitation of the defendant and protection of society, *id.*§§1.8(a) (iii), 3.1 (a), commentary; and the benefit to the court of expediting this case and other cases on the docket, *id.* §1.8(a) (vi). The conclusion of the lower court that this case was appropriate for such

---

attorney the private prosecutor then has recourse to the common pleas court. His complaint will be impartially reviewed by a judge for approval or disapproval. *Piscanio Appeal*, 235 Pa. Superior Ct. 490, 344 A.2d 658 (1975).

disposition and that the district attorney was performing his duty conscientiously in recommending such action does not appear to be an abuse of its discretion. The basis for the replacement of the Commonwealth's attorneys in the past under the several statutes that permit supersession has generally been some evidence of misconduct or conflicting interest or loyalty which casts doubt on the diligent performance of duty. *Smith v. Gallagher*, 408 Pa. 551, 185 A.2d 135 (1962); *Dauphin County Grand Jury Investigation Proceedings (No. 2)*, 332 Pa. 342, 2 A.2d 802 (1938); *Commonwealth v. McHale*, supra. No misconduct was even alleged in the present case. We would agree with the lower court that this is not a proper case for replacement of the district attorney.

Petitioners also argue that they were entitled to a hearing in which to present their position. Although a hearing might have been helpful in airing the petitioners' criticisms, it is certainly not required either in the Act of 1955 or in the case law in order to deny the petition. *Cf., Smith v. Gallagher*, supra; *Commonwealth v. McHale*, supra.

In their last point, petitioners submit that as a result of these errors the sentence should be set aside and the case remanded for a trial and resentencing. Presumably, petitioners' objective is either to convict the defendant of more than the one count of involuntary manslaughter to which he pleaded guilty and see a harsher sentence imposed, or simply to increase the existing sentence. This is an unrealistic goal. This Court has repeatedly held that the modification of a sentence on a criminal defendant which increases the punishment for the underlying offense constitutes double jeopardy. *Commonwealth v. Moore*, 225 Pa. Superior Ct. 264, 302 A.2d 396 (1973); *Commonwealth v. Davy*, 218 Pa. Superior Ct. 355, 280 A.2d 407 (1971). *See also*, Act of December 6, 1972, P.L. 1482, No. 334, §1, 18 Pa.C.S. §§109, 110.

Finally, an issue has been raised by the dissent which was, with good reason, neither raised nor briefed by the

petitioners. It is pointed out that three appeals[5] were taken to the Supreme Court during the course of the proceedings, the first being on December 20, 1974 after the guilty plea, which was made on June 28, 1974, but before the sentence on December 30, 1974. The appeal is thought to deprive the lower court of jurisdiction to proceed further with the matter. In view of our disposition of this case on its merits, it would be senseless to reverse and remand simply to ensure jurisdictional adequacy when the alleged deficiency was never raised by the parties. However, in view of the particular facts of the case before us, we must note the serious difficulties att ndant to the dissenting position.

The rule of *Harwood v. Bruhn*, 313 Pa. 337, 170 A. 144 (1934) is that "[t]he writ of certiorari issued by the appellate court acts to stay further proceedings by requiring the lower court to transmit the 'record in the cause or matter wherein is entered the sentence, order, judgment or decree appealed from': Act of May 19, 1897, P.L. 67, 12 P.S. 1134." *Commonwealth v. Fisher*, 189 Pa. Superior Ct. 8, 10-11, 149 A.2d 670, 671 (1959). Although the rule is stated in terms of transmission of the record it is apparently not the absence of the record, or receipt of the writ of certiorari, which operates to stay the proceedings. These events generally indicate a transferral of jurisdiction which ordinarily will operate to stay proceedings, but there are some well-recognized circumstances where the writ is issued and the record is removed but the lower court is competent to proceed. *Commonwealth v. Johnson*, 431 Pa. 522, 246 A.2d 345 (1968); *Commonwealth v. Fisher*, supra; Act of July 31, 1970, P.L. 673, No. 223, art. V, §501(b), 17 P.S. §211.501(b) (Supp. 1975-76). The present situation, wherein the appellants are not parties but are attempting to intervene in a case in which the Commonwealth

---

5. All three appeals were eventually transferred to the Superior Court and consolidated.

and William Walter are the parties, appears in a posture similar to that of *Commonwealth v. Fisher*, supra. In that case this Court stated: "While we have no intention of questioning the rule enunciated in Harwood v. Bruhn, supra, 313 Pa. 337, 170 A. 144, we consider that the unique facts of the instant case present a situation not controlled thereby. Otherwise, as vigorously argued by counsel for appellee, the filing of an appeal by a witness would automatically halt the trial in the lower court, no matter how many days or weeks had been spent thereon and regardless of the expense involved or the serious nature of the issues. We have not found, nor has reference been made to, a single case which supports the Commonwealth's contention that the appeal of a witness ... affects the orderly progress of a trial in which the witness was not a party." *Commonwealth v. Fisher*, supra at 11, 149 A.2d at 671-72. We apply the same reasoning to this case and hold that this appeal by a person not a party did not prevent the lower court from imposing sentence ten days later.

Orders and judgment affirmed.

---

DISSENTING OPINION BY PRICE, J.:

Without reaching the merits of the appeal, I would reverse the action of the lower court due to a procedural error.

The docket entries most immediately relevant to the present case indicate that on July 26, 1974, appellants filed a petition in the lower court to replace the district attorney with a private prosecutor. This petition was denied by the trial court by order dated December 2, 1974. Appellants appealed this denial to the Pennsylvania Supreme Court and on December 20, 1974, certiorari was granted.[1] This divested the lower court of

---

1. That appeal, which was on March 5, 1975, transferred to this court, is the appeal at 419 April Term, 1975. Two subsequent appeals were taken to the supreme court and also transferred to this court, the

jurisdiction over the case. *Commonwealth v. Johnson*, 431 Pa. 522, 246 A.2d 345 (1968); *DeMatteo v. White*, 233 Pa. Superior Ct. 339, 336 A.2d 355 (1975).

However, on December 30, 1974, the lower court accepted a guilty plea and sentenced the defendant. Because jurisdiction rested with the supreme court at that time, the lower court had no power over the proceedings and could not dispose of the case. The proceedings in the lower court were a nullity during the pendency of that appeal.

The guilty plea was improperly accepted and sentence could not have been imposed. I would remand the case for a proper determination of the defendant's guilt and a proper sentence.

Again, without reaching the merits, I must also note an inconsistency in the majority opinion. At the outset, the majority acknowledges that the facts of the case are "sketchy," but later concludes that "the posture of this case compels the conclusion that the lower court acted properly in denying the petition." (Majority opinion at page 439). When faced with evidence as "sketchy," as well as conflicting, as that found here, the action of the lower court does not immediately appear to comply with the American Bar Association standards discussed by the majority. Under the circumstances of the instant case, we should not so readily affirm the actions of the lower court. Reversing and remanding would be neither senseless nor would it simply ensure jurisdictional adequacy, but is rather mandated in this situation.

---

appeal at 420 April Term, 1975 from an order of the lower court entered December 23, 1975, and the appeal at 421 April Term, 1975 from the proceedings in the lower court on December 30, 1975.