**James P. WEISMAN, Plaintiff,**

v.

**Lawrence A. SHERRY, Defendant.**

**Civ. No. 80–0580.**

United States District Court, M. D. Pennsylvania.

March 12, 1981.

Charles P. Gelso, John Bednarz, Wilkes Barre, Pa., for plaintiff.

Donald Brobst, Wilkes Barre, Pa., for defendant.

## MEMORANDUM AND ORDER

### I. INTRODUCTION

NEALON, Chief Judge.

This case concerns the scope of the state action requirement in 42 U.S.C. § 1983.[1] On June 6, 1978, Lawrence Sherry accused James P. Weisman of theft in a private criminal complaint filed before District Justice Ronald W. Swank of Mountaintop, Pennsylvania. In the current litigation, Weisman claims that his constitutional rights were violated, because Sherry lacked probable cause to make such an allegation. The defendant has moved to dismiss the pleadings for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Accordingly, the court must accept all of the plaintiff's averments as true. *Hochman v. Board of Education of the City of Newark*, 534 F.2d 1094, 1097 n.1 (3d Cir. 1976). Nevertheless, the defendant's motion will be granted inasmuch as the plain-

---

1. The statute reads:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

tiff has not alleged sufficient state action as required under § 1983.[2]

In initiating his criminal action before District Justice Swank, Sherry contended the following:

> [Weisman] recovered a refrigerator (GE), washer and a dryer from the residence at 460 South Mountain Boulevard, Mountaintop, Pa. [Weisman] did so knowing [these items] did not belong to him and with intent to deprive the lawful owner thereof.

It must be assumed that Sherry made this accusation in bad faith and without probable cause. The District Attorney approved the defendant's complaint, and District Justice Swank authorized the issuance of process.[3]

On October 21, 1979, two constables arrested Weisman while he was dining with friends at the Encore Restaurant in Pittsburgh, Pennsylvania. These officers took the plaintiff to a police station and incarcerated him for a total of three and one-half hours. During that time, Weisman was photographed, fingerprinted, and booked. He was not released on bail until midnight.[4] Ten days later, District Justice Swank held a preliminary hearing on the matter in Mountaintop. Sherry, however, did not appear and, in the absence of any inculpatory evidence, the charges against Weisman collapsed. As a result of the aborted prosecution, the plaintiff incurred a variety of injuries including legal expenses, loss of reputation, and mental distress.

## II. OUTLINE OF THE ARGUMENT

To state a valid claim under § 1983, a complaint must allege that the *defendant violated a constitutional right of the plaintiff* while *acting under color of state law. Adickes v. S. H. Kress & Company*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). The validity of the current action hinges on one question, *viz.*, the existence of "state action." A prosecution initiated without probable cause or conducted for an improper purpose may deprive the victim of procedural due process. *Jennings v. Schuman*, 567 F.2d 1213, 1220 (3d Cir. 1977); *Dellums v. Powell*, 490 F.Supp. 70, 72 (D.D.C.1980). *See also Pierson v. Ray*, 386 U.S. 547, 555–558, 87 S.Ct. 1213, 1218 1219, 18 L.Ed.2d 288 (1967). Yet since the latter liberty springs from the Fourteenth Amendment, relief is inappropriate unless the complainant can demonstrate that the transgression occurred through state action. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). Likewise, Weisman must prove that Sherry was "clothed with the authority" of Pennsylvania in order to satisfy the "color of state law" component in § 1983. *Jennings v. Schuman*, 567 F.2d at 1219–30. Thus, the present suit must be dismissed unless the defendant's alleged misdoing can be properly attributed to the Commonwealth.

injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Weisman's civil rights claim rests on 28 U.S.C. § 1343, the jurisdictional counterpart to § 1983. The complaint also contains a state theory for relief, apparently malicious prosecution. The latter cause of action is justified under this court's discretion to accept pendent jurisdiction. Although the complaint indicates that the plaintiff and defendant were citizens of different states at the filing of this suit, the pleadings do not invoke 28 U.S.C. § 1332 as a possible ground for subject matter jurisdiction. *See* Part IV of this Memorandum.

3. These actions adhered to Pennsylvania Rule of Criminal Procedure 133(B). A fuller explanation of the process is set forth in Part III of this Memorandum.

The complaint does not explain the details of the alleged theft. According to the defendant's brief, Sherry had purchased a house from Weisman, and the items at issue were supposed to pass with the real estate. The plaintiff, however, moved the dryer and refrigerator. Sherry claims that he filed the criminal action on the advice of counsel. *See* Document 12 of the Record.

4. Neither Weisman's complaint nor his brief in opposition to Sherry's motion allege that the defendant conspired with officials of the Commonwealth in carrying out the illegal arrest. The pleadings do assert that when the constables arrested the plaintiff they did so "maliciously, falsely, and erroneously." Read as a whole, however, the complaint does not describe concerted conduct between the officers and the defendant. Counsel for Sherry, moreover, has never advanced a conspiracy theory.

The propriety of finding "state action" in private conduct depends upon the facts of a particular situation. In certain circumstances, for example, judicial enforcement of contracts and other private arrangements is illegal as an official endorsement of invidious discrimination. *See United States Jaycees v. Philadelphia Jaycees,* 639 F.2d 134, 143–146 (3d Cir. 1981). State action may also be implied when an individual conspires with governmental officers[5] or when the private and official conduct are so closely intertwined that they form a "symbiotic relationship" or "close nexus."[6] In the instant case, however, even the plaintiff admits that the Commonwealth was not actively involved in the supposed wrongdoing. Rather, Weisman's state action theory rests on the proposition that Sherry's filing of the complaint constituted a "public function."

The Supreme Court has recognized on a number of occasions that certain activities are so inherently governmental that their exercise remains official conduct even if implemented under private auspices. *Flagg Brothers, Inc. v. Brooks* offers valuable guidance in this area. That suit concerned the liability of a warehouseman who, pursuant to a New York statute, had threatened to sell certain stored property in order to satisfy the owners' debts. The plaintiffs sought an injunction on the ground that the confiscation would violate their rights to due process and equal protection. The defendant maintained that no claim had been asserted under § 1983, because the requisite state action was lacking. In response to this argument, the complainants attempted to convince the Court that the statute authorizing the sale delegated a "traditional function of civil government" to warehousemen, *viz.*, "resolution of private disputes." 436 U.S. at 157, 98 S.Ct. at 1734. This rationale was not accepted.

On behalf of the majority, Justice Rehnquist explained that the scope of the public function doctrine is narrow. To qualify for application of the principle, an action must by tradition be an *exclusive* function of government. Relatively few forms of conduct fit this description. Justice Rehnquist noted that previous Supreme Court decisions had recognized two such activities: the holding of elections and the maintenance of a municipality. The *Flagg Brothers* majority suggested other "functions" that might fall within the scope of the doctrine, *e. g.*, "education, fire and police protection, and tax collection." *Id.* at 163–64, 98 S.Ct. at 1737. The Court, nevertheless, held that the "field of private commercial transactions" did not offer an adequate basis for construing individual conduct as state action. *Id.* at 159–64, 98 S.Ct. at 1735–1737.[7]

Cases following the *Flagg Brothers* holding have done so on an *ad hoc* basis. Courts have had to look to the nature of a particular activity in order to determine if the public function doctrine should apply.[8] The

---

**5.** *Dennis v. Sparks,* —— U.S. ——, ——, 101 S.Ct. 183, 185–187, 66 L.Ed.2d 185 (1980).

**6.** The distinctions between the "symbiotic relationship" and "close nexus" tests are by no means concise. According to *Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589 (3d Cir. 1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980), the difference is essentially one of degree. The symbiotic relationship rule applies when the state and private party are engaged in an ongoing "joint venture." *Id.* at 595–97. *See, e. g., Chalfant v. Wilmington Institute,* 574 F.2d 739, 744–46 (3d Cir. 1978) (*en banc*) (public library). Conversely, the close nexus principle governs situations in which officials are so involved in a specific act that the results of the act may be fairly attributed to the state. *Id.* at 597. *See also*

*Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

**7.** In reaching this decision, the majority implicitly rejected a prior decision rendered by our Court of Appeals. *Parks v. "Mr. Ford,"* 556 F.2d 132 (3d Cir. 1977) (*en banc*).

**8.** The Court of Appeals for the Second Circuit, for example, has ruled that fire fighting is so "governmental in nature" that volunteer departments perform state action. *Janusaitis v. Middlebury Volunteer Fire Department,* 607 F.2d 17, 21–25 (2d Cir. 1979). Other conduct has been found outside the sweep of the principle. *See, e. g., Jensen v. Farrell Lines, Inc.,* 625 F.2d 379, 385 86 (2d Cir. 1980) (merchant marine); *Ryan v. Ohio Edison Company,* 611 F.2d

instant case demands a similar assessment. In essence, it is necessary to determine if Sherry's execution of the criminal complaint amounted to an action which traditionally is performed by the Commonwealth.

### III. THE PRIVATE CRIMINAL COMPLAINT

In proceeding against Weisman, the defendant invoked Pennsylvania Rule of Criminal Procedure 133(B), which states:

1. When the affiant is not a police officer as defined in Rule 51(C) and the offense(s) charged include(s) a misdemeanor or felony which does not involve a clear and present danger to any person or to the community, the complaint shall be submitted to the attorney for the Commonwealth, who shall approve or disapprove without unreasonable delay.

. . . .

3. If the attorney for the Commonwealth

(i) approved the complaint, he shall indicate his decision on the complaint form and transmit it to the issuing authority.

(ii) disapproved the complaint, he shall state his reasons on the complaint form and return it to the affiant. Thereafter the affiant may file the complaint with a judge of a court of common pleas for approval or disapproval.

(iii) does not approve or disapprove within a reasonable period of time, the affiant may file the complaint on a separate form with the issuing authority, noting thereon that a complaint is pending before the attorney for the Commonwealth. The issuing authority shall determine whether a reasonable period has elapsed, and, when appropriate, shall defer action to allow the at-torney for the Commonwealth an additional period of time to respond.

According to Weisman, Sherry followed subsection (3)(i) of this provision in that the District Attorney "approved" the criminal complaint before the arrest was made. The question is whether use of this procedure triggered state action.

Courts have considered the applicability of the public function doctrine to private criminal complaints in a variety of contexts. *See* Annot., 44 ALR Fed 225 (1979). According to these authorities, the controlling question is whether or not the state has delegated a portion of its traditional power to arrest and prosecute alleged criminals. *Voytko v. Ramada Inn of Atlantic City*, 445 F.Supp. 315 (D.N.J.1978) offers a good illustration of this principle. The case concerned a criminal complaint filed by a hotel against two former patrons who supposedly had failed to pay their bills. The *Voytko* plaintiffs were originally charged with felony-level offenses.[9] Pursuant to New Jersey law, arrest warrants were issued immediately. Like Weisman, the former patrons were detained, fingerprinted, and required to post bail. When the grand jury refused to return indictments, the private complainant filed new actions alleging misdemeanor-level violations. At the trial, an attorney retained by the hotel actually represented the state.[10] The New Jersey court, however, directed an acquittal at the close of the prosecution's case, and the patrons subsequently brought a suit for damages under § 1983.

In sustaining a civil rights complaint, Judge Gerry found that the plaintiffs had alleged the requisite degree of state action. This decision, however, turned on the extraordinary powers the hotel had been allowed to exercise. The *Voytko* opinion explained:

In sum, the innkeeper exercises a prosecutorial privilege at criminal law which

1170, 1176 (6th Cir. 1979) (public utility); *Musso v. Suriano*, 586 F.2d 59, 63 (7th Cir. 1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1534, 59 L.Ed.2d 788 (1979) (care of the elderly).

**9.** The initial complaints were submitted under NJSA 2A:111–19 (1969), which authorized pen-alties ranging as high as imprisonment for three years.

**10.** A New Jersey court rule permitted private attorneys to appear for the state in suits initiated by complaining witnesses.

derives from the sovereign. The criminal statutory scheme inherently deters non-payment and its threatened use in a specific case may induce payment; *this places the hotel into a functional position toward debtors not unlike the tax collector* who has criminal remedies at his disposal to induce payment. *The innkeeper's power to act as if it were the state is even further enhanced by the state custom allowing the hotel's own retained attorney to act as criminal prosecutor on behalf of the state* ...

*Id.* at 322 (emphasis added). Judge Gerry ruled that the prerogatives given the hotel under the New Jersey scheme constituted a "delegation of sovereign power" which provided state action under § 1983. *Id. See also Mendoza v. K-Mart, Inc.*, 587 F.2d 1052, 1056–57 (10th Cir. 1978).

Other precedents concur in this rationale. In *Henderson v. Fisher*, 631 F.2d 1115, 1118–19 (3d Cir. 1980), our Court of Appeals ruled that a Pennsylvania statute which endowed the University of Pittsburgh Campus Police with the same powers enjoyed by municipal police forces delegated a "public function" and, thus, gave rise to state action.[11] Section 1983 liability may also be appropriate in situations where the authorities arrange, by a preconceived plan, to arrest suspects detained by private parties without an independent determination of probable cause. *Smith v. Brookshire Brothers, Inc.*, 519 F.2d 93, 94–95 (5th Cir. 1975). *See also El Fundi v. DeRoche*, 625 F.2d 195, 196 (8th Cir. 1980); *White v. Scrivener Corporation*, 594 F.2d 140, 143 (5th Cir. 1979); *Duriso v. K-Mart No. 4195*, 559 F.2d 1274, 1277–78 (5th Cir. 1977).

The cases, however, clearly hold that state action will not arise through statutes which merely enable citizens to bring alleged crimes to the attention of the authorities. *Jennings v. Schuman*, for example, involved a suit by a person who accused a district attorney, a special prosecutor, and a police officer with cooperating in the initiation of a prosecution that lacked probable cause. The Court of Appeals had no problem finding state action with regard to the first two defendants, since they were officers of the Commonwealth. 567 F.2d at 1220. Close consideration was required in the third situation. The plaintiff accused the policeman of "making false statements which provided the basis for the criminal process." The *Jennings* panel explained that, standing alone, this action would not have established state action, because such misconduct "could have been performed by a private citizen." Indeed, the Court of Appeals sustained the complaint against the policeman only after an alternative ground for jurisdiction had been alleged, *i. e.*, an allegation of conspiracy between the officer and the other two defendants, both of whom were attorneys of the Commonwealth. *Id.*

*Jennings* stands for the proposition that "making false statements which [provide] a basis for the criminal process ... [may be] performed by a private citizen." *Id.* Accordingly, the precedent also indicates that such conduct is not a "public function" traditionally reserved to the state. Many other cases have ruled that a private citizen does not perform state action by simply furnishing the authorities with allegations later used in a prosecution. *Howard v. Lemmons*, 547 F.2d 290 (5th Cir. 1977); *Grow v. Fisher*, 523 F.2d 875, 879 (7th Cir. 1975); *Sykes v. State of California (Department of Motor Vehicles)* 497 F.2d 197, 202 n.3 (9th Cir. 1974); *Barnes v. Dorsey*, 480 F.2d 1057, 1061 (8th Cir. 1973). Likewise, § 1983 does not provide a remedy against a person who, in bad faith, initiates litigation that leads to civil commitment of a relative. *Dahl v. Akin*, 630 F.2d 277, 280–82 (5th Cir. 1980).

■ The instant case more clearly resembles *Jennings* than *Voytko*. Sherry did not arrest Weisman or conduct the prosecution on behalf of the state. By invoking Rule 133(B), the defendant merely called "the attention of the attorney for the Common-

---

**11.** Similar results occurred in *Thompson v. McCoy*, 425 F.Supp. 407, 409–10 (D.S.C.1976) (private security guards) *and DeCarlo v. Joseph Horne and Company*, 251 F.Supp. 935, 936–37 (W.D.Pa.1966) (store detectives).

wealth to an alleged violation of the law." *Piscanio Appeal*, 235 Pa.Super. 490, 495–96 & n.5, 344 A.2d 658 (1975). The "decision to prosecute," moreover, remained "initially in the hands of the district attorney." *Commonwealth v. Walter*, 240 Pa.Super. 433, 438–39 & n.4, 367 A.2d 1113 (1976). In short, Sherry acted as a private individual, not as an agent of Pennsylvania. His conduct may have been tortious, but that fact alone does not activate § 1983. The essential state action is lacking. Accordingly, Weisman's civil rights action must be dismissed.[12]

## IV.  THE STATE CLAIM

■ The plaintiff's state claim must be assessed from two perspectives. First, the court has already noted that the complaint contains some allegations suggesting that there may be a basis for asserting diversity of citizenship. *See* n.2, *supra*. The pleadings must be judged in their totality, and an action should not be conclusively dismissed if an unasserted alternative ground for jurisdiction is evident. *See Vukonich v. Civil Service Commission*, 589 F.2d 494, 496 (10th Cir. 1978); *Fleming v. Apollo Motor Homes, Inc.*, 87 F.R.D. 408, 410–11 (M.D.N.C.1980); Wright & Miller, *Civil Practice & Procedures* : § 1206 at 77–78 (1969). In the current situation, however, counsel for the plaintiff has never discussed diversity in his brief or in any of the pretrial conferences. The court would be reluctant at this stage of the proceedings to infer an intention to proceed according to 28 U.S.C. § 1332, especially since the plaintiff's reasons for not asserting the statute are unknown. Accordingly, the state claim will be dismissed without prejudice. Weisman may refile the malicious prosecution cause of action in the event he feels that diversity jurisdiction is appropriate.

■ Second, the court must rule on the validity of pendent jurisdiction over the

state claim. The relevant policies concern "commonsense"; the overall goal is "the conservation of judicial energy and the avoidance of multiplicity of litigation." *Rosado v. Wyman*, 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970). At times, these considerations authorize a district court to consider state theories even if the underlying federal claim is relatively weak. *Shands v. Tull*, 602 F.2d 1156, 1158–60 (3d Cir. 1979). In the instant litigation, however, the civil rights contention has been dismissed at the pleading stage. Retention of the malicious prosecution claim would simply lead to a needless adjudication of Pennsylvania law by a federal court. Such a result would be improper. *United Mineworkers v. Gibbs*, 383 U.S. 719, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The court, therefore, shall refuse to exercise pendent jurisdiction. *Rogin v. Bensalem Township*, 616 F.2d 680, 697 (3d Cir. 1980).

---

**12.** To place this case in the proper perspective, it is necessary to judge the defendant's conduct according to Weisman's allegations rather than the various contingencies permitted by Rule 133(B) but unused in the instant litigation. Certain counties occasionally allow attorneys retained by private complainants to represent the Commonwealth during the early stages of the prosecution. *See* Criminal Rule 141, Lackawanna County Court of Common Pleas. Had such a lawyer appeared in Weisman's situation, the ruling of this court on the state action issue may well have been different. Yet no private prosecution ever occurred and it is not necessary to speculate as to the proper result for such a hypothetical development.